John KOLLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 49239.

Court of Criminal Appeals of Texas.

Feb. 5, 1975.

**374**

W. V. Dunnam, Jr., Waco, for appellant.

Martin D. Eichelberger, Dist. Atty., Ward Casey and Felipe Reyna, Asst. Dist. Attys., Waco, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

The appellant was convicted of murder with malice and his punishment was assessed by the jury at twenty (20) years' confinement in the Texas Department of Corrections.

The evidence adduced at trial, including the appellant's confession in which he admitted killing the deceased, showed that the deceased phoned the appellant on April 21, 1973 and requested that he and the appellant meet to discuss some earlier "trouble" between them. Shortly thereafter, the appellant drove to the deceased's house and picked him up, and they drove several miles outside of Waco to a dirt road which was parallel to the North Bosque River. The appellant stopped his car on the road and he and the deceased shared a marihua-

na cigarette. They both then got out of the appellant's car and began to walk together down the road in front of the car. During this walk, they got into an argument concerning whether the deceased had burglarized some unnamed persons' house and thereby deprived the appellant of money owed him by such persons. The deceased denied committing the alleged burglary and, while reaching behind his back and turning sideways from facing the appellant, exclaimed, "God damn, God damn, that's not right." The appellant immediately shot the deceased two or three times in the chest with a pistol and, after determining that he was dead, dragged his body into thick brush about forty feet from the dirt road. The appellant threw the pistol into the North Bosque River while leaving the scene, but, because of the muddy condition of the water, attempts by police to recover it failed.

The appellant alleges some twenty-eight (28) grounds of error. Due to our disposition of the case, we need discuss only four.

 In grounds of error number sixteen, seventeen and eighteen, the appellant contends that the State during argument at the punishment stage of the trial commented on his failure to testify, thereby violating Article 38.08, Vernon's Ann.C.C.P.[1] The three arguments complained of are set out below:

". . . We still don't know what the motive was. We still don't know what the full facts were of this murder out there on the Bosque River. And it's within Mr. Dunnam's control to bring you those blanks, but he won't bring them to you. He wants you to buy a pig in the poke."

". . . Has anybody—has anybody in this whole week ever told you that they were sorry for killing Charles Adcock?"

". . . How much mercy has John Koller ever shown you. He wants to talk to you about rehabilitation. This defendant has never taken the first step toward rehabilitation. He has never said I was wrong and I'm sorry. How can you rehabilitate somebody who won't even admit they're wrong?"

Immediately following each of the arguments above, the appellant made a motion for mistrial, objected to the argument, and requested an instruction to the jury to disregard.[2] In each instance the motion for mistrial was denied, the objection was overruled, and the request for an instruction to disregard was denied. For there to be reversible error because of an allusion to or comment on the failure of an accused to testify in his own behalf, the language used must be looked to from the standpoint of the jury, and the implication that the language used had reference to such failure to testify must be a necessary one. Winkle v. State, 506 S.W.2d 891 (Tex.Cr. App.1974); Turner v. State, 504 S.W.2d 843 (Tex.Cr.App.1974); Yates v. State, 488 S.W.2d 463 (Tex.Cr.App.1972); Ramos v. State, 419 S.W.2d 359 (Tex.Cr. App.1967). Further, "[i]t is not sufficient that the language might be construed as an implied or indirect allusion thereto." Yates v. State, supra, 488 S.W.2d at 466; Winkle v. State, supra; Turner v. State, supra. The evidence in the present case clearly showed that the deceased and the appellant were alone at the time of the killing. The case did not involve a co-defendant, and the State did not produce any witnesses who were present at the killing. By viewing the evidence before the jury, it

---

1. Article 38.08, Vernon's Ann.C.C.P.:
 "Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause."

2. Though the proper method of pursuing an objection until an adverse ruling is to (1) make an objection; (2) request an instruction to disregard; (3) make a motion for a mistrial, the method employed by appellant's counsel in the present case is sufficient to preserve possible error or review.

is clear that the appellant *alone* would be able to explain motive or relate the full facts surrounding the killing. The fact that the first argument referred to Mr. Dunnam's (appellant's attorney) failure to bring out the motive or full facts surrounding the killing is inconsequential since it is clear that the prosecutor was really referring to the appellant.[3] The second argument, "[h]as anybody in this whole week told you *they* were sorry *for killing* Charles Adcock?" was clearly made in reference to the appellant, as the evidence had shown that he acted alone in killing the deceased. The third argument, "[t]his defendant . . . has never said I was wrong and I'm sorry," merely serves to further emphasize to the jury the fact that the appellant did not testify in his own behalf. The language here used by the prosecutor cannot reasonably be construed as referring to the appellant's failure to produce testimony other than his own. See Brown v. State, 475 S.W.2d 761 (Tex.Cr.App.1971); Alvear v. State, 170 Tex.Cr.R. 378, 341 S.W.2d 426 (1960).

In addition to the above arguments, our examination of the record reveals another argument made by the prosecutor during the guilt-innocence stage of the trial which clearly referred to the failure of the appellant to testify. The prosecutor stated:

". . . The motive for the crime, ladies and gentlemen, is locked up and being kept secret, and there is no way in the world that the State can prove it."

The court overruled the appellant's immediate motion for mistrial, but sustained his objection to the argument and instructed the jury to disregard the same. In Minton v. State, 162 Tex.Cr.R. 358, 285 S.W.2d 760 (1956),[4] this court reversed a conviction where the prosecutor during closing argument stated:

"We cannot open up that man's head and tell what was in his mind."

See also, Bell v. State, 130 Tex.Cr.R. 57, 92 S.W.2d 450 (Tex.Cr.App.1936); Sanders v. State, 123 Tex.Cr.R. 409, 59 S.W.2d 1116 (1933). The similarity between that argument and the argument in the present case is apparent. In each, the reference was to the thought processes of the appellant and the inability of the State to prove such. Such arguments are clearly intended to bring to the jury's attention the failure of the appellant to testify in his own behalf.

It is apparent that the prosecutor by his arguments repeatedly attempted to remind the jury of the appellant's failure to testify. By considering the language of the arguments together with the evidence before the jury, we find that each of the arguments previously discussed was manifestly intended to be, and was, of such a character that the jury would naturally or neces-

---

3. The present case is distinguishable from the situation in Lipscomb v. State, 467 S.W.2d 417 (Tex.Cr.App.1971), where this court held that an argument directed at defense counsel with reference to his failure to argue that his client was innocent *was not* a comment on the failure of the accused to testify. The argument in *Lipscomb* was as follows:

"I thought that with two of them talking here, that maybe one of them would say their client was innocent, but I never heard that, and it seems to me that if I were trying the wrong man, or if I were called upon to defend somebody and had the wrong man or had someone who didn't commit the crime, you would stand up before twelve jurors and say, this man is innocent."

See also Meyer v. State, 416 S.W.2d 415 (Tex. Cr.App.1967). In the present case, the evi-

dence that the appellant *alone* killed the deceased, and that the appellant *alone* could relate the facts and circumstances surrounding the killing, is uncontroverted. The prosecutor's argument was in direct reference to the appellant's failure to produce evidence; since the appellant *alone* through his own testimony could produce the facts surrounding and motive for the killing, the reference to Mr. Dunnam's failure to produce evidence clearly conveys the message to the jury that the appellant did not testify.

4. As in the present case, the court in *Minton* sustained the objection to the argument and instructed the jury to disregard the same, but denied the motion for mistrial.

sarily take it as a comment on the failure of the appellant to testify. Chapman v. State, 504 S.W.2d 912 (Tex.Cr.App.1974); Lipscomb v. State, 467 S.W.2d 417 (Tex. Cr.App.1971); Ramos v. State, supra.

In addition to the above error, we feel compelled to discuss another error which occurred during the course of the trial. In ground of error number six, the appellant contends that the trial court erred in overruling his motion for mistrial because the prosecutor proved in the presence of the jury that the woman who accompanied the appellant when he made his confession was a prostitute. The record reveals the following exchange between the prosecutor and the State's witness:

"Q. Where did you see the defendant, John Koller?

"A. At the Courthouse Annex.

"Q. And did he come to the Courthouse Annex by himself, or someone else?

"A. No, sir. He came with a woman.

"Q. And who was the woman?

"A. Jeannie Windham.

"Q. And who is Jeannie Windham?

"A. A prostitute."

At this point, the appellant immediately asked the court to declare a mistrial on the ground that the State was deliberately attempting to attack his character by attacking the character of his associate. Following denial of the motion for mistrial, the court sustained the appellant's objection and instructed the jury to disregard the testimony. The prosecutor immediately resumed his questions concerning the occupation of the appellant's associate, as shown in the following excerpt from the record:

"Q. Jeannie Windham, is she a police officer?

"A. No, sir.

"Q. She is not an employee of the Department of Public Safety?

"A. No, sir.

"Q. Or the District Attorney's Office?

"A. No, sir.

"Q. The Waco Police Department?

"A. No, sir.

"Q. McLennan County Sheriff's Department?

"A. No, sir.

"Q. And, of course, all you know about her occupation is what she has told you, is that right?"

At this point, the court again denied the appellant's renewed motion for mistrial, but sustained his objection and instructed the jury to disregard the testimony. As this court stated in Gant v. State, 513 S. W.2d 52, 53 (Tex.Cr.App.1974),

"It is clear that one's character is no evidence of guilt. It should be even more obvious that the character of one's associates is no evidence of guilt, and we have held that such evidence should not be admitted. See Harrell v. State, 153 Tex.Cr.R. 141, 218 S.W.2d 466 (1949). Indeed, it has been held that one may not even be impeached by the character of his associates. See Holsey v. State, 24 Tex.App. 35, 5 S.W. 523 (1887)."

Even if the first reference to the alleged occupation of the defendant's associate was, as the State now claims, the accidental result of an unresponsive answer, the renewed questioning cannot be termed as such.

It is apparent that the only reason the prosecutor questioned the witness further on the subject was to emphasize the inadmissible evidence to the jury. As in Gant v. State, supra, we find that the State

**378**

sought to introduce evidence which was clearly calculated to prejudice the appellant's right to a fair trial.

In addition to the misconduct of the prosecutor already discussed, our examination of the record reveals numerous other incidents where the trial court sustained objections to his questions, arguments or conduct, and instructed the jury to disregard the same. Among these are forty-five (45) objections to improper questions, sixteen (16) objections to improper arguments, thirteen (13) objections to misconduct and side-bar remarks, and seven (7) deliberate attempts to circumvent the court's earlier rulings. As we recently noted in Boyde v. State, 513 S.W.2d 588 (Tex.Cr.App.1974), it is regrettable that a prosecutor finds it necessary to pursue a course of repeatedly attempting to place matters before the jury which are clearly impermissible. In order to preserve possible error for review, the appellant's counsel was required to object, request an instruction to disregard, and make a motion for mistrial following each of these incidents. Therefore, the misconduct of the prosecutor only served to greatly elongate the trial proceedings.

We are again forced to reassert the critical importance of convicting an accused only upon the evidence presented which shows that he is guilty of the offense charged, Newman v. State, 485 S. W.2d 576 (Tex.Cr.App.1972), and not through attempting to inflame or prejudice the minds of the jurors. E. g., Renn v. State, 495 S.W.2d 922 (Tex.Cr.App.1973) (On Motion for Rehearing); Stein v. State, 492 S.W.2d 548 (Tex.Cr.App.1973); White v. State, 492 S.W.2d 488 (Tex.Cr. App.1973). The conduct of the prosecutor could have served no other purpose than to deprive the appellant of a fair trial by prejudicing the jury against him.

For the grounds of error heretofore discussed, the judgment is reversed and the cause is remanded.