Kenneth Albert BROCK, Appellant,

v.

The STATE of Texas, Appellee.

No. 53108.

Court of Criminal Appeals of Texas.

June 14, 1977.

Rehearing Denied July 13, 1977.

Adrian M. Burk, Marvin O. Teague (on appeal only), Houston, for appellant.

Carol S. Vance, Dist. Atty., William W. Burge and George O. Jacobs, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for capital murder wherein the punishment was assessed at death. See V.T.C.A., Penal Code, § 19.03, and Article 37.071, Vernon's Ann.C.C.P.

Appellant contends the imposition of death as a penalty for capital murder is cruel and unusual punishment, that said § 19.03 and Article 37.071 do not provide effective guidance to a jury as to the imposition of the death penalty, that eleven prospective jurors were improperly excused in light of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), that he was deprived of due process as some prospective jurors were improperly excluded even though they met the standards set by V.T.C.A., Penal Code, § 12.31(b), and said Article 37.071. He further challenges the constitutionality of Article 35.16(a)(10). He also advances a number of other grounds of error, including a claim that the evidence is insufficient to support the jury's answer of "yes" to Special Issue No. 2 of the court's charge at the penalty stage of the trial.

A review of the facts is necessary for a proper disposition of the case. The record

reflects that between 1:30 and 2 a. m. on May 21, 1974 Joe and Vivian Hargrove went to a Seven-Eleven store at 8625 East Houston Road in Harris County. When they walked into the store, they saw the appellant standing behind the manager of the store, the deceased, Michael Sedita, who was in the process of taking money out of the cash register. Appellant commanded the Hargroves to get down on the floor, and they did as he had a pistol. The appellant then told Sedita he was taking him (Sedita) with him, and they left the store. Houston Police Sergeant P. M. Hogg while on patrol observed Sedita, whom he knew, and appellant come out of the store. Appellant had Sedita by the right arm. As Hogg drove up, appellant jerked Sedita around a corner and Hogg observed a man inside the store pointing emphatically in the direction of appellant. Hogg put out a robbery in progress report to the police dispatcher, grabbed his shotgun and followed the appellant to the alley. Appellant fired at Hogg and Hogg jumped back of an ice machine. He could see the appellant had Sedita in front of him with a gun to his chest. Hogg told appellant to drop his gun and give up, as it wasn't worth anybody getting killed. Appellant said he wouldn't surrender and warned Hogg to get back.

Officers Orlando and Cormier arrived and Hogg ordered them to shut off the end of the alley. As the officers approached that end of the alley, a white Dodge Dart with its lights on sped away and shots were fired at the car. Cormier told appellant to drop his gun, but appellant told him to back up or that he would shoot Sedita. Cormier told appellant not to hurt the manager and "we will let you go." Cormier and Orlando dropped their guns to their sides and backed up. Appellant, with Sedita, retreated up the alley to Surrey Road. Officer W. E. Carmichael arrived about the same time as Cormier and Orlando and he soon joined Officers Jalamo and Phillips on Surrey Road, catching appellant and Sedita between the two sets of officers. Sedita yelled to Jalamo, "Jack, don't come any

closer, the guy is sick." [1] The officers retreated, but nevertheless appellant shot Sedita in the left chest as Sedita yelled, "Oh, God he shot me," and fell to the ground. Appellant then ran into the nearby woods. The 31 year old Sedita died at the scene despite efforts to save him, as the bullet severed the aorta, causing massive bleeding. Numerous officers sealed off the area and a search with the use of bloodhounds was commenced. Appellant was eventually apprehended in the area.

As to appellant's contention the imposition of death as punishment violates the Eighth and Fourteenth Amendments to the United States Constitution, it is observed that this court has never in its history held that the death penalty constitutes cruel and unusual punishment under such federal constitutional provisions or under the provisions of the Texas Constitution (Article I, § 13). See *Jurek v. State,* 522 S.W.2d 934 (Tex.Cr.App.1975); *Livingston v. State,* 542 S.W.2d 655 (Tex.Cr.App.1976).

Further, in *Gregg v. Georgia,* 428 U.S. 227, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the United States Supreme Court rejected the same contention advanced by appellant. See also *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

See also *Gholson v. State,* 542 S.W.2d 395 (Tex.Cr.App.1976); *Woodkins v. State,* 542 S.W.2d 855 (Tex.Cr.App.1976); *Collins v. State,* 548 S.W.2d 368 (Tex.Cr.App.1976); *Burns v. State,* 556 S.W.2d 270 (Tex.Cr.App.1977).

*Jurek v. Texas,* supra, has been decided contrary to appellant's contention that V.T.C.A., Penal Code, § 19.03, and Article 37.071, Vernon's Ann.C.C.P., are unconstitutional because they do not provide effective guidance to a jury as to the imposition of the death penalty for punishment. See also *Gholson v. State,* supra.

In twenty grounds of error appellant attacks the jury selection procedure used. He contends that eleven of the jurors were

---

1. Carmichael remembered Sedita saying the appellant was crazy.

improperly challenged and excused in violation of the standards set forth in *Witherspoon v. Illinois,* supra.

In *Horvila v. State,* 532 S.W.2d 293 (Tex. Cr.App.1976), we held that the holding of *Witherspoon* was still alive and well in light of the new statutory scheme providing for the imposition of the death penalty, the adoption of which followed in the wake of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). See also *Livingston v. State,* 542 S.W.2d 655 (Tex.Cr. App.1976). See and cf. *Davis v. Georgia,* 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 399 (1976).

In *Witherspoon* the Supreme Court of the United States wrote:

". . . Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected."

The court further wrote:

"Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position." 88 S.Ct. at pp. 1773–1774, footnote # 9.

■ We have carefully examined the voir dire examination of the eleven prospective jurors[2] listed by the appellant and do not

find that they were improperly challenged and excused in light of *Witherspoon.* Each of these prospective jurors stated clearly and unambiguously that he or she would never vote in any case to impose the death penalty regardless of the facts or circumstances involved. We find no error in the court's action in excusing these prospective jurors. See *White v. State,* 543 S.W.2d 104 (Tex.Cr.App.1976); *Livingston v. State,* 542 S.W.2d 655 (Tex.Cr.App.1976); *Woodkins v. State,* 542 S.W.2d 855 (Tex.Cr.App.1976); *Smith v. State,* 540 S.W.2d 693 (Tex.Cr.App. 1976).

Further, we note that while the appellant did object to the court's action in excusing each of these prospective jurors the objection was not always on the ground now urged on appeal. The objection to the excusing of several of these individuals was that the imposition of the death penalty was unconstitutional.[3]

■ Appellant further argues that despite Article 35.16(b)(1), Vernon's Ann.C. C.P.,[4] there is no longer a challenge for cause if a prospective juror states he has conscientious scruples to the infliction of death as punishment for a crime since, (1) the jury no longer assesses such punishment in its verdict [Article 37.071, Vernon's Ann. C.C.P.]; and second, if the prospective juror states under oath that the mandatory penalty of death or life imprisonment will affect his deliberations on any issue of fact then and only then is he excused, not for cause but because he is disqualified by V.T. C.A., Penal Code, § 12.31(b).[5]

2. These prospective jurors were Calvin Reed, Thomas Slough, Mrs. Janie Richards, Mrs. Virgie F. Shockley, Mrs. Bobbie Massey, Dennis Velasquez, Murphy L. Young, Albert G. Baroski, Mrs. Rives Smith, Frank C. Hanus and William D. Rourke.

3. As earlier noted, the death penalty scheme for capital murder in this State has been held constitutional by this court, *Jurek v. State,* 522 S.W.2d 934 (Tex.Cr.App.1975); *Livingston v. State,* 542 S.W.2d 655 (Tex.Cr.App.1976), and by the United States Supreme Court, *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).

4. Article 35.16(b)(1), supra, provides:
"(b) A challenge for cause may be made by the State for any of the following reasons:
"(1) That the juror has conscientious scruples in regard to the infliction of the punishment of death for crime, in a capital case, where the State is seeking the death penalty".

5. V.T.C.A., Penal Code, § 12.31(b), reads:
"(b) Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death

We do not agree. In *Hovila v. State,* 532 S.W.2d 293 (Tex.Cr.App.1976), this court wrote:

"While the new statutes provide that the jury shall take an oath that they will not let the penalty involved affect their deliberations and requires them only to answer questions while the judge actually assesses the punishment based on such answers, the fact remains that the jury will know that their answers will determine whether the defendant is to be punished by death or by life imprisonment. To say that the jury's answers would not be affected by their attitude toward the death penalty as a punishment for crime simply because they will not bring forth the ultimate verdict would be to disregard the obvious. We will not engage in such tenuous reasoning."

We adhere to *Hovila.* The fact that the jurors do not write "death" in their verdict does not mean that there is no longer a challenge for cause as provided in Article 35.16(b)(1).

■ Further, where prospective jurors are properly disqualified under the *Witherspoon* rule, the fact they may or may not have been disqualified or even questioned under V.T.C.A., Penal Code, § 12.31(b), is of no consequence. Cf. *Battie v. State,* 551 S.W.2d 401 (Tex.Cr.App.1977); *Whitmore v. State* (Tex.Cr.App. No. 52,325, Oct. 13, 1976); *Smith v. State,* 540 S.W.2d 693, 698 (Tex.Cr.App.1976). Cf. *Moore v. State,* 542 S.W.2d 664, 672 (Tex.Cr.App.1976). A prospective juror may be disqualified under either said § 12.31(b) or *Witherspoon* or both. There is no requirement that a prospective juror must first be interrogated about § 12.31(b) before there can be any voir dire examination concerning the *Witherspoon* question.

In passing we note that appellant did not object to the excusing of any prospective juror on the grounds now urged on appeal.

In two grounds of error appellant challenges the constitutionality of Article 35.-16(a)(10), Vernon's Ann.C.C.P.,[6] on the ground that it discriminates against those persons who cannot read or write. In two other grounds he complains that the court erred in sustaining a State's challenge for cause to prospective juror Joel Jackson under such statute because there is no requirement of law that requires a juror to read or write anything during the trial of a case.

The prospective juror Jackson testified that he didn't get any "further than the first grade" and that he was unable to read or write the English language. He was excused upon challenge for cause by the State for this reason.

Appellant states he is not unaware of the holding of *Hernandez v. State,* 506 S.W.2d 884 (Tex.Cr.App.1974), that the inability to read and write is a proper challenge for cause and that the requirement contemplates that he shall be able to express his ideas in writing.[7] See also *Johnson v. State,* 21 Tex.App. 368, 17 S.W. 252 (1886). Nevertheless, without citation of authority, he urges it is now time to declare this "anachronism from the past" unconstitutional as many citizens cannot read nor write the English language, and there is no requirement of the law that requires reading or writing ability on the part of a juror urging that a mark is as good as a signature.

■ First, we observe that there was no objection to excusing the juror on the

or imprisonment for life will not affect his deliberations on any issue of fact."

**6.** Article 35.16(a), as amended in 1969, provides:

"A challenge for cause is an objection made to a particular juror, alleging some fact which renders him incapable or unfit to serve on the jury. A challenge for cause may be made by either the State or the defense for any one of the following reasons:

.     .     .     .     .

"(10) That he cannot read or write. .    ."

Subsection (10) was formerly Subsection (11) in Article 35.16(a) as adopted in 1965.

**7.** It is observed that the *Hernandez* opinion refers in error to Article 35.16(a), Subsection 11, instead of Subsection 10. Subsection 11 of said Article as enacted in 1965 became Subsection 10 by Acts 1969, 61st Leg., p. 1364, ch. 412, § 3, eff. Sept. 1, 1969. Now see Acts 1975, 64th Leg., p. 475, ch. 202, § 2, eff. Sept. 1, 1975.

ground now urged on appeal, and nothing is presented for review. *Boulware v. State,* 542 S.W.2d 677 (Tex.Cr.App.1976). Even if there had been an objection on the basis now urged, we adhere to our holding in *Hernandez v. State,* supra. We hold that Article 35.16(a)(10), supra, is constitutional. The court did not err in sustaining the challenge for cause.[8]

Appellant in five grounds of error argues that the court erred in admitting into evidence State's Exhibit # 36, a judgment of a prior conviction for burglary, at the "sentencing hearing" since it was not shown he was the person so convicted, that the exhibit was hearsay and the proper predicate was not laid for its introduction.

The exhibit was identified by a deputy district clerk as a judgment of conviction in Cause No. 127610 in the 177th District Court wherein Kenneth Albert Brock was convicted of burglary with intent to commit theft in 1967. The objection offered at trial was that the prior conviction was too remote and that the judgment had been set aside and the indictment dismissed as the probation granted the appellant had been successfully completed and therefore the judgment was not admissible as a conviction.

In *Golden v. State,* 475 S.W.2d 273 (Tex.Cr.App.1971), it was held that the defendant's ground of error on appeal differed from his trial objection as to the admissibility of prior convictions and failed to present error. See also *Bacon v. State,* 500 S.W.2d 512 (Tex.Cr.App.1973). The ground of error set forth in the brief, not having been presented to the trial court for a ruling, presents nothing for review. See *Watson v. State,* 532 S.W.2d 619 (Tex.Cr.App.1976); *Williams v. State,* 531 S.W.2d 606 (Tex.Cr.App.1976); *Sloan v. State,* 515 S.W.2d 913 (Tex.Cr.App.1974); *Rawlinson v. State,* 487 S.W.2d 341 (Tex.Cr.App.1972).

In *Rose v. State,* 507 S.W.2d 547 (Tex.Cr.App.1974), relied upon by the appellant, the trial objection to the admission of prior convictions and the ground of error on appeal were the same.

In three grounds of error appellant contends the prosecutor in his argument at the penalty stage of trial or "sentencing hearing"[9] alluded to the failure of appellant to testify. The complained of argument was:

"Remember what Mr. Burk (defense counsel) said to you back when we were picking the Jury? Do you remember this? He said and he asked do you believe in rehabilitation. Yes, you all did, and we all do, certainly. He said do you believe any man can be rehabilitated. He asked you that and you agreed with it and said that if the man wants to, if he would take that first step, if he wants to, if he wants to be rehabilitated. Kenneth Brock has yet to take that step in the Courtroom, and I think the twelve of you know exactly what I mean and I want you to remember that when you go out there—"

At this point appellant's counsel objected and moved for a mistrial. The court overruled the objection and the motion.

The prosecutor then continued:

"Just remember that. The man has to want to. He has to want to be rehabilitated. . . ."

The prosecutor then turned to a discussion of the evidence as to whether the appellant had been using drugs or alcohol.

In *Bird v. State,* 527 S.W.2d 891 (Tex.Cr.App.1975), this court wrote:

"It is basic and fundamental law in this State that the failure of an accused to testify may not be the subject of comment by the prosecution. Such comment is in violation of the privilege against self-incrimination contained in Article I, Sec. 10 of the Texas Constitution, and in express violation of Article 38.08, Ver-

---

8. We observe that prospective juror Jackson was shown to have been subject to challenge by the State in light of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), if such challenge had been made.

9. See Article 37.071, Vernon's Ann.C.C.P.

non's Ann.C.C.P., which provides in part that '. . . the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause.' See also *McDaniel v. State,* 524 S.W.2d 68 (Tex.Cr.App. 1975); *Anderson v. State,* 525 S.W.2d 20 (Tex.Cr.App.1975); *Hicks v. State,* 525 S.W.2d 177 (Tex.Cr.App.1975); *Koller v. State,* 518 S.W.2d 373 (Tex.Cr.App.1975); *Cherry v. State,* 507 S.W.2d 549 (Tex.Cr. App.1974); *Watson v. State,* 171 Tex. Cr.R. 526, 352 S.W.2d 120 (1961); *Griggs v. State,* 166 Tex.Cr.R. 56, 311 S.W.2d 418 (1958); *Lee v. State,* 162 Tex.Cr.R. 489, 286 S.W.2d 633 (1956).

"Further, a comment on an accused's failure to testify also presents a federal constitutional question as the same has been held violative of the self-incrimination clause of the Fifth Amendment, which is made applicable to the States by virtue of the Fourteenth Amendment. See *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Fontaine v. California,* 390 U.S. 593, 88 S.Ct. 1229, 20 L.Ed.2d 154 (1968).

"The prohibition against such comment on the accused's failure to testify is mandatory and the adverse effect of any reference to the accused's failure to testify is not generally cured by instruction. *Overstreet v. State,* 470 S.W.2d 653 (Tex. Cr.App.1971); 56 Tex.Jur.2d, Trial, Secs. 266 and 336; Branch's Ann.P.C., 2d ed., Sec. 395.

"It is well settled in this State that for the argument or comment to offend against the statute (Article 38.08, supra) the language used must be looked to from the standpoint of the jury, and the implication that the language used had reference to the accused's failure to testify must be a necessary one. It is not sufficient that the language might be construed as an implied or indirect allusion thereto. *Ramos v. State,* 419 S.W.2d 359, 367 (Tex.Cr.App.1967), and cases there cited; *Overstreet v. State,* supra;

*Koller v. State,* 518 S.W.2d 373 (Tex.Cr. App.1975); *McDaniel v. State,* supra; *Hicks v. State,* supra.

"The test employed is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. See *McDaniel v. State,* supra; *Koller v. State,* supra; *Chapman v. State,* 504 S.W.2d 912 (Tex.Cr.App.1974). In applying this test, the facts and circumstances of each case must be analyzed to determine whether the language used was of such character. *Overstreet v. State,* supra; *Ramos v. State,* supra."

In the instant case appellant's counsel first argued that the rich never get the electric chair but "always some guy that has been beaten down, poor and oppressed, a despised person." Counsel placed the appellant in this category by reference to the fact he had appointed counsel, only two shirts and one pair of trousers, that his father was an alcoholic, that he had been run away from home by his stepfather, that he had been taking drugs, etc. Counsel argued that appellant had been stripped of all his dignity and his civil rights and urged the jury to assess life, imprisonment and give him a chance to learn a trade, and counsel also argued " . . . and having a horrible act relived, every minute of it, his skin is quivering, his heart has beat like a rabbit that's chased through the brush, he's perspiring, and now after all this, can we say that Kenneth Brock is a continuing threat to society?"

█ During the voir dire examination appellant's counsel had inquired about rehabilitation and called four witnesses at the penalty stage of the trial, but their testimony did not touch on any efforts toward rehabilitation. The jury argument for the appellant described above was then made. When taken in context, the prosecutor's argument was that while defense counsel had talked about rehabilitation, the witnesses called did not indicate that he could or desired to be rehabilitated, and that in-

stead appellant tried to blame his situation on his adversity.

While the phrase "in the courtroom" should not have been used, applying the test above discussed we cannot conclude that the argument in question was a comment on the appellant's failure to testify calling for reversal of this conviction.

Appellant contends the "evidence presented . . . at the punishment stage of the proceedings, is insufficient to support the jury's answer of 'Yes' to Special Issue Number 2 of the court's charge." See Article 37.071, supra.[10]

█ First, we observe that appellant's contention that only the evidence at the punishment stage of the trial may be looked to, to determine the sufficiency of the evidence to support the verdict as to Special Issue No. 2 is without merit. The jury in determining Special Issue No. 2 may consider the testimony elicited at the guilt stage as well as the penalty stage of the trial of a capital murder case.

█ The evidence at the guilt stage of the trial was undisputed that appellant committed a brutal and senseless murder during the course of a robbery. Even though he had obtained the money from the cash register, he abducted the deceased and held him as hostage. Although the officers never fired a shot and retreated upon request and implored appellant not to harm the deceased, under the circumstances described above, he shot and killed the deceased and fled into the woods. Appellant's

conduct was calculated and remorseless. Cf. *Smith v. State*, supra. At the penalty stage of the trial there was shown a conviction for burglary with intent to commit theft, and three witnesses [11] with varied backgrounds testified that the appellant's reputation for being a peaceful and law-abiding citizen was "bad" and another witness (Caroline Homeline) testified that such reputation "From what I know of it, it's not good."

Dorothy Matson, appellant's mother, testified for the defense that the appellant had been placed in the Faith Home when he was about nine years old at the time she separated from his father. She said appellant never graduated from high school. Mrs. Alvis Wilkey testified that appellant had lived at her home for some time.

Linda Brock, appellant's sister, testified for the defense. She stated her 26 year old brother started "straying away" from school at an early age, that he had argued with their stepfather and had been ordered out of the home about age 14. She testified that she knew he "fooled around" with drugs and narcotics. She had seen him smoke marihuana and take pills and that when he was under the influence of drugs he was a different person and that "it possessed him like a demon." She had seen a hypodermic needle at the place where he lived. She did not know whether the appellant was employed prior to the commission of the alleged offense.[12]

William Patton testified that the appellant and his girlfriend, Debbie Zapata, had

---

10. Article 37.071(b)(2) provides:
    "(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society".

11. These three witnesses were Sandra Fletcher, Thomas M. McLemore and Lloyd L. James. In the absence of the jury Fletcher testified that while she was employed at a Seven-Eleven store she was robbed by the appellant on May 21, 1974. McLemore testified that on May 12, 1973 he played a game of pool with the appellant and later while he was standing at the bar the appellant stabbed him in the chest. He related the appellant was attempting to sell the drug qualude in the lounge. James testified he was present and took McLemore to the hospi-

tal. The State proffered this testimony, but the court excluded it from being presented to the jury.

12. In light of some of her testimony, the State maintained that the defense had converted appellant's sister into a reputation witness. In absence of the jury, the State propounded several "Have you heard" questions to her. She acknowledged that she had heard the appellant had been committed to the Harris County School for boys and later committed to the state school for boys at Gatesville. The court, however, excluded such testimony from the jury, apparently not believing that the witness had become a reputation witness.

come by his house on the day in question and prior to the alleged offense and that the appellant was under the influence of truenals and that he had seen him in such condition on several previous occasions.

In light of the facts of this brutal and senseless murder committed during the course of a robbery, appellant's prior criminal record, the undisputed testimony that his reputation for being a peaceful and law-abiding citizen was "bad," his background and use of narcotics, we conclude the evidence was sufficient to support the jury's answer of "Yes" to the second special issue submitted to them at the "sentencing hearing" under Article 37.071, Vernon's Ann.C. C.P.

The judgment is affirmed.

ROBERTS, J., concurs in the result reached, but does not abandon his position in regard to the *Witherspoon* question.