**Gary Elsworth LICHTENWALTER,
Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 52619.**

Court of Criminal Appeals of Texas.

July 13, 1977.

Rehearing Denied Sept. 14, 1977.

Ray Epps, Houston, for appellant.

Carol S. Vance, Dist. Atty., Clyde F. DeWitt, III, Michael J. Hinton and Vic Pecorino, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

Appellant was convicted for aggravated assault. His punishment was assessed at five years' imprisonment.

The sufficiency of the evidence is not challenged.

The sole contention raised on appeal is that the trial court improperly admitted evidence of appellant's membership in the Bandido Motorcycle Club. Appellant's membership card was introduced into evidence at trial.

This prosecution arose from events occurring at the "Up Front Lounge" in Houston on February 26, 1974. Deputy Rodney Scott Morgan of the Harris County Sheriff's Department and Officer F. G. Dodd of the Houston Police Department were working as undercover agents in the "Up Front Lounge" on the night of the offense. Their purpose was to investigate "Alley Cat", a member of the Bandido Motorcycle Club and a known narcotics trafficker.

Appellant, Morgan, and Glen Wilhelm, a co-defendant in this case, went to the restroom of the lounge and a fight ensued. Dodd heard the commotion, drew his pistol and went to the aid of his fellow officer. When he opened the restroom door, he observed Wilhelm attempting to stab Morgan.

Dodd fired one shot in the air and assisted Morgan to his feet. Morgan drew his

pistol and the two officers subdued appellant and the co-defendant.

The record clearly demonstrates that the jury was presented other evidence establishing appellant's membership in the Bandido Motorcycle Club. This evidence was admitted prior to the introduction of the membership card and no objection was voiced by the appellant when it was introduced.

George Nesbett, the bartender of the Up Front Lounge, testified that he heard a "lot of noise, racket and thumping" after the appellant and the co-defendant, Glen Wilhelm, entered the restroom. Nesbett stated that he went to the restroom to "see what was going on." At this point Nesbett testified:

"Q. Anybody standing outside the restroom door?

"A. A man was standing there, yes, sir.

"Q. Did you know him as a member of any particular club or organization?

"A. Yes, sir. I didn't know him as a member, but I knew he was with the members of the organization already in there.

"Q. And what organization is that?

"A. The Bandido's Motorcycle Gang."

Nesbett's testimony also established that the persons in the restroom were deputy Morgan, the appellant and Wilhelm, the co-defendant. The jury knew that deputy Morgan was not a member of the Bandidos. The jury was informed by Nesbett's above-quoted testimony that the appellant and the co-defendant were "members of the organization already in there", and that this organization was the "Bandido's Motorcycle Gang." Nesbett's testimony directly connected the appellant with the motorcycle club.

The jury also heard other testimony connecting the appellant with the Bandido organization. The jury was informed that the Up Front Lounge was a Bandido hangout and that Morgan's and Dodd's purpose at the bar was to investigate a member of the motorcycle club. Patricia Jean Kelly,

the manager of the lounge, stated that members of the motorcycle club were in her establishment on the night of the offense. Nesbett, in addition to his statements quoted above, also testified that the Bandidos' girls were in the bar at the time of the altercation in the restroom and that his initial statement to the police regarding the incident did not contain everything he knew because he was fearful of "repercussions" from the motorcycle gang.

In *Wood v. State*, Tex.Cr.App., 511 S.W.2d 37, at 47, we stated:

"The general rule is that a judgment will not be reversed for error in admission of improper evidence if the same facts were proved by other testimony to which there were no objections."

We stated the same principle in *Miles v. State*, Tex.Cr.App., 499 S.W.2d 175:

"It has long been the rule that improper admission of evidence does not constitute reversible error if the same facts were proved by evidence not objected to." Also see, *Vaughn v. State*, Tex.Cr.App., 530 S.W.2d 558; *Hawkins v. State*, Tex. Cr.App., 505 S.W.2d 578; *Compton v. State*, Tex.Cr.App., 500 S.W.2d 131; *Maldonado v. State*, Tex.Cr.App., 467 S.W.2d 468; *Lassere v. State*, Tex.Cr.App., 458 S.W.2d 81; *Merx v. State*, Tex.Cr.App., 450 S.W.2d 658.

No objection was made to Nesbett's testimony. The jury was aware that the appellant was a member of the motorcycle club before the identification card was introduced into evidence. The admission of the card, therefore, does not constitute reversible error. Appellant's ground of error is overruled.

The judgment is affirmed.

ROBERTS, Judge, dissenting.

I.

The majority interprets the record in such a manner that its opinion will hang on one of the hooks of a rule that does not bear one for fundamental unfairness.

First, the majority's interpretation of Nesbett's testimony which "establish[ed] appellant's membership in the Bandido Motorcycle Club." Nesbett testified as follows:

"Q And when you arrived in this approximate location behind the cigarette machine—incidentally, is this a little foyer here outside the restroom?

"A Yes, sir, there is.

"Q Anybody standing outside the restroom door?

"A A man was standing there yes, sir.

"Q Did you know him as a member of any particular club or organization?

"A Yes, sir. I didn't know him as a member, but I knew he was with the members of the organization already in there.

"Q And what organization is that?

"A The Bandido motorcycle gang."

While Nesbett's testimony established that the persons in the restroom were Deputy Morgan, the appellant and Wilhelm, the jury had just finished hearing Kelly's testimony that other members of the "Bandidos" were in the lounge itself on the night of the offense. Nesbett's testimony about "members of the organization already in there" does not answer whether he meant "in there"—in the restroom or "in there"—in the lounge itself. The jury did know that there were other members of the Bandido motorcycle gang in the lounge. But if Nesbett meant in the lounge, then his testimony merely stated that the mysterious man in the "little foyer here outside the restroom" was with members of the Bandidos already in the lounge.

Next, the "other testimony *connecting* the appellant with the Bandido organization." (Emphasis added). Apparently, the majority feels that other evidence inferentially connected the appellant with the Bandidos. They draw this inference from the fact that before his Bandido identification card was introduced there were numerous references to the Bandido motorcycle club itself; that Morgan's and Dodd's purpose at the bar was to investigate a member of the motorcycle club; that Kelly testified that

members of the motorcycle club were in her establishment on the night of the offense; that Nesbett testified that the Bandidos' girls were in the bar at the time of the altercation in the restroom; and that his statement to the police was not complete because he was fearful of "repercussions from the motorcycle gang."

These facts, the majority feels, connected the appellant with the Bandidos. I concede that the jury was informed that the "Up Front Lounge" was a Bandido hangout and that Morgan's and Dodd's purpose at the bar was to investigate a member of the motorcycle club. However, I am not sure whether the majority feels the inference of a non sequitur or the hammer of an identification card. I am equally not sure what the jury felt.

Next, assuming strained arguendo that Nesbett's testimony "directly connected" the appellant to the Bandidos and makes possible the application of the rules of *Wood, supra,* and *Miles, supra,* the majority shortsightedly applies these rules.

"It has long been held that the admission of improper evidence will not require reversal if the same facts are proved by 'other and proper' testimony. (Citation). Frequently referred to as the 'General Rule,' this rule has been cited so often that no useful purpose would be served at this point by canvassing the many cases in which it appears." *Alvarez v. State,* 511 S.W.2d 493, 498 (Tex.Cr.App. 1974, opinion on State's second motion for rehearing).

The general rule is that *if* the *same facts* were proved by evidence not objected to the improper admission of evidence does not constitute reversible error. *Miles, supra.* This is not a strict rule of evidentiary, procedural or substantive law. This is another phase or shade of the principle that breathes through the appellate judiciary: the harmless error rule. "*[I]f* a fact be proven without objection, its erroneous proof over objection, although still error, is *harmless error* since the same facts have been proven without objection." (Emphasis added). *Nicholas v. State,* 502

S.W.2d 169, 175 (Tex.Cr.App. 1973, opinion on State's motion for rehearing). The larger question we face in this appeal is whether to apply the harmless error rule. The question should be answered as follows:

## II.

Appellant contends that the trial court erred when it admitted over his objection, during the State's case in chief, his Bandido membership card. The State had custody of appellant's billfold until the time they sought to introduce the Bandido membership card into evidence, and apparently the billfold was recovered by the police during the incident at the lounge.

The record reveals that the jury probably was aware that the "Up Front Lounge" was a Bandido hangout. Also, they were informed that Morgan's and Dodd's purpose for being present at the "Up Front Lounge" that night was to investigate one "Alley Cat," a known Bandido and narcotics trafficker. However, outside of appellant's Bandido identification card which was introduced into evidence over his objection, nothing specifically tied the appellant to that organization.

The appellant did not take the stand and put his character in issue. As a general rule, the character of a person accused of a crime is not a fact in issue and the prosecution cannot, in its case in chief, introduce evidence tending to show the defendant's bad character or reputation unless the accused first introduces evidence of good character or reputation. *Michelson v. United States*, 335 U.S. 469, 475, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *Lovett v. State*, 158 Tex.Cr. 550, 258 S.W.2d 335, 336 (1953).

*Gant v. State*, 513 S.W.2d 52 (Tex.Cr.App. 1974), concerned the erroneous admission of character evidence. We reversed the defendant's conviction, holding:

"It is clear that one's character is no evidence of guilt. It should be even more obvious that the character of one's associates is no evidence of guilt, and we have held that such evidence should not be admitted. (Citation). Indeed, it has been held that one may not even be impeached by the character of his associates. (Citation)." *Id.*, at 53.

In *Koller v. State*, 518 S.W.2d 373 (Tex.Cr.App. 1975), the evidence included the defendant's confession. We reversed the defendant's conviction for numerous errors including a character attack by the prosecution. After noting the above-quoted holding of *Gant*, we stated:

"We are again forced to reassert the critical importance of convicting an accused only upon the evidence presented which shows that he is guilty of the offense charge, (citation), and not through attempting to inflame or prejudice the minds of the jurors. (Citations). The conduct of the prosecutor could have served no other purpose than to deprive the appellant of a fair trial by prejudicing the jury against him." *Id.*, at 378.

There was no reason for the appellant's Bandido membership card to have been offered or admitted into evidence.

"Harmless error is intended to cover those inadvertent slips, which occasionally creep into a hotly contested trial, which do not severely prejudice the rights of the defendant. Harmless error should never be applied in those instances where the prosecution deliberately, or because of very careless procedures, injects prejudicial error into the proceedings." *State v. Atwater*, 193 Neb. 563, 228 N.W.2d 274, 275 (1975).

I further note that the appellant timely requested a charge which would have instructed the jury that if appellant was a member of the Bandido motorcycle club it should not be considered as evidence of his guilt or innocence. The trial court denied this requested charge.

Appellant's ground of error should be sustained and the judgment reversed. He had not placed his character in issue; the evidence introduced could only serve to arouse the passion and prejudice of the jury; the trial court denied him the opportunity to cure, if he could have, the error committed. "The conduct of the prosecutor could have served no other purpose than to deprive the

appellant of a fair trial by prejudicing the jury against him." *Koller, supra.*

### III.

The error created by the introduction into evidence at the State's case in chief of appellant's Bandido identification card should not be countenanced on the basis of "in there." The judgment should be reversed, the cause remanded, and appellant retried for aggravated assault and not for being a Bandido.

ONION, P. J., joins in this dissent.