**Leobardo RODRIGUEZ, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–89–00087–CR.**

Court of Appeals of Texas,
El Paso.

March 14, 1990.

Susan Larsen, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

OPINION

KOEHLER, Justice.

This is an appeal from a conviction for murder. The jury assessed punishment, enhanced by one prior conviction for murder, at imprisonment for ninety-nine years. We reverse and remand.

Shortly after 4:00 a.m., December 2, 1985, two El Paso police officers on routine patrol in central El Paso discovered the body of twenty-nine year old David Ciliberto in his mother's gray Buick Skylark. Ciliberto, a New York resident, had borrowed the vehicle in October and was en route to

California to return it to her. He had been shot once in the left side of his jaw, the bullet angling downward through his neck, severing the carotid artery, exiting and ultimately lodging in his right shoulder. The coroner testified that he would have been immediately incapacitated by this wound and dead within several minutes. He bled profusely; spattered and pooled blood was found throughout the front of the vehicle. His body appeared to have been hastily shifted from the driver's seat and was resting on its right side between the front bucket seats, hip on the console between the seats. The glove compartment was open and papers were scattered about the vehicle. The deceased's effects in the backseat had been thoroughly handled by someone with blood on his hands. Bloody palm and fingerprints were found on the interior and exterior of the car. Blood was found on the steering wheel, ignition and gear shift. These last residues, coupled with the position of the body and the coroner's depiction of immediate incapacity and death, led investigators to believe that Ciliberto had been shot while seated in the driver's seat and that the assailant hurriedly entered the vehicle, pushing Ciliberto aside and driving from the shooting site to the location where the body was ultimately found.

A canvassing of the neighborhood produced a later report by a confidential informant identifying Appellant as the assailant and one Sergio Cisneros as a witness. Eventually the investigation led directly to Appellant and led to the intersection of Seventh and Ochoa Streets as the probable shooting site. Sixty latent and patent fingerprints were discovered in the vehicle. Of these, nineteen latent and one patent (bloody) prints were of evidentiary value. Eight latents were identified as Ciliberto's. Eleven were never identified. The one bloody patent impression was identified as matching the left thumb print of the Appellant. It was found on a plastic bag inside Ciliberto's vehicle.

Witness Manuel Morales was near the intersection of Seventh and Ochoa at 6:00 p.m., December 1. According to Detective Flynn and the coroner, Dr. Juan Contin,

this time was consistent with the rigor mortis and lividity observed in the body of the deceased as a possible time of the shooting and death. Morales observed his brother, Alberto, in the company of Juan Mendoza. He also saw both the Appellant and Sergio Cisneros nearby. He saw his brother enter Mendoza's vehicle. Five to ten minutes later, he heard a gunshot. He could not tell who was shooting. He assisted an elderly woman and several children move out of the street.

Juan Mendoza testified that he arrived at the intersection with Alberto Morales at 6:00 p.m. in his white 1978 Thunderbird. They stopped to use a public telephone. Mendoza saw a gray vehicle parked near the intersection. It was occupied by one individual not known to Mendoza. At trial, Mendoza identified two photographs of Ciliberto's vehicle as the gray automobile seen near the intersection. He also saw a blue vehicle parked near the intersection. The driver was someone he had seen before but did not know by name. He also saw the Appellant in this blue vehicle. While he was on the telephone, with his back turned, he heard a shot coming from the direction of the gray car. He could not see the Appellant. The blue vehicle sped off, occupied then by only one person. Mendoza entered his own vehicle with Alberto Morales and drove rapidly away from the scene.

Other evidence depicted this intersection as a low level distribution point of marihuana. The State's theory was that Ciliberto visited the area trying to purchase some marihuana. Appellant approached him with robbery in mind but wound up shooting him. He then drove the vehicle away. He made a hasty unsuccessful search of the vehicle for money and then left. Police ultimately found $2,000.00 in traveler's checks hidden under the driver's seat and another $1,770.00 in the trunk. On December 19, a team of detectives visited Appellant's home to execute an arrest warrant. When the two detectives knocked on the front door, Appellant fled out the back into the waiting arms of Detective Ibarra. Af-

ter a brief struggle, Appellant was taken into custody.

Despite the circumstantial nature of the proof, the sufficiency of the evidence to support the verdict is not challenged on appeal. In fact, in the context of all the circumstances shown, the patent bloody fingerprint of the Appellant made a strong case for the State—strong enough to make an improper comment on Appellant's failure to testify all the more frustrating at the appellate level. That is the subject of *Point of Error No. Four.*

In final argument at the guilt stage, the prosecutor argued:

> Now, there's only one identifiable blood print. Guess who that belongs to. Leobardo. You know, they can't explain—
>
> .      .      .      .      .
>
> You know there is one thing they can't explain. What is Leobardo's print, bloody print, doing in that car? They had an opportunity to explain it and they didn't.

The defense objected that this was a reference to Appellant's failure to testify. The prosecutor responded that he was referring to the defense's failure to call independent fingerprint expert Ramon Rendon as a witness. With that qualification, the objection was overruled. There had been testimony that Rendon, as a defense expert, had examined all prints discovered by the police, particularly State's Exhibit No. Thirty-nine and the known prints of the Appellant.

■ The failure of an accused to testify may not be the subject of comment by the State. *Bird v. State,* 527 S.W.2d 891 (Tex. Crim.App.1975). In the case of an indirect comment, such as the one before us, reversible error is presented if the comment, viewed from the jury's standpoint, would naturally and necessarily be interpreted as a reference to the accused's failure to testify. *Banks v. State,* 643 S.W.2d 129 (Tex. Crim.App.1982). If the comment, in light of the entire evidentiary record, could be interpreted as referring to the defense's failure to present available evidence from sources other than the accused, reversible error is not presented. *Milton v. State,*

620 S.W.2d 115 (Tex.Crim.App.1980). The possible existence and availability of such other sources must be affirmatively reflected in the evidence before the jury. The State is not permitted to conjure up the existence of some phantom witnesses and then castigate the defense for having failed to summon them to testify. *Montoya v. State,* 744 S.W.2d 15, 33 (Tex.Crim.App. 1987). If the evidence does not raise the existence and availability of such witnesses other than the accused, then the indirect comment must necessarily refer to the defendant's failure to testify. *Myers v. State,* 573 S.W.2d 19 (Tex.Crim.App.1978); *Koller v. State,* 518 S.W.2d 373 (Tex.Crim. App.1975).

■ In this case, the prosecutor's immediate response to the objection was that he was referring to the defense's failure to call their pretrial expert investigator, Ramon Rendon. Rendon was a known potential witness, referred to in testimony. However, the prosecutor's comment did not refer to the print comparison evidence offered by Detective Orozco and the defense failure to counter the identification opinion with their own expert testimony. The argument clearly and solely addressed the *presence* of the bloody print in the deceased's vehicle and *how* it was placed there. That is not a subject which would naturally fall within the range of Rendon's potential testimony. The courts are not bound to accept a prosecutor's incredulous construction of his argument offered to avoid the consequences of an improper comment. The explanation must be assayed in light of the precise content of the argument, its logical meaning, and its relationship to the evidence in the case. *Montoya,* 744 S.W.2d at 36–37. The trial court erred in accepting the prosecutor's specious reliance on Rendon's failure to testify and in overruling the defense objection upon that hollow qualification.

The evidentiary record does not suggest any possible witness or source of explanation for how or when Appellant's bloody print was placed in the vehicle, other than the Appellant himself. Consequently, the challenged argument can only be viewed as

a natural and necessary reference to Appellant's failure to testify. Point of Error No. Four is sustained.

Full discussion of the other points of error would add nothing to the jurisprudence of the State. We do conclude, however, that Point of Error No. One (introduction of hearsay evidence) is overruled for failure to lodge timely objection in the trial court. *Marini v. State,* 593 S.W.2d 709 (Tex.Crim.App.1980). Point of Error No. Two (ineffective assistance of counsel) is overruled for failure to satisfy the second prong of the test set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Point of Error No. Three (refusal to order disclosure of confidential informant or dismiss prosecution) is overruled on the basis of the *in camera* hearing record brought forward on appeal. The confidential informant who initially placed Detective Flynn on the trail leading to Sergio Cisneros and ultimately the Appellant, did so solely on the basis of hearsay he encountered in the neighborhood. He had no direct evidence or personal knowledge to offer. The trial court's ruling was proper under Tex.R.Crim.Evid. 508(c)(2).

The judgment is hereby reversed and the cause remanded to the lower court for new trial.