**Donald Gene DAKIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–81–00479–CR.**

Court of Appeals of Texas, Dallas.

April 16, 1982.

Rehearing Denied May 25, 1982.

Edgar A. Mason, Dallas, for appellant.

Karen C. Beverly, Asst. Dist. Atty., Dallas, for appellee.

Before AKIN, ALLEN and WHITHAM, JJ.

WHITHAM, Justice.

■ This is an appeal from a conviction for murder. Punishment was assessed at life imprisonment. Because we agree with appellant's ground of error that prosecutorial misconduct at trial deprived appellant of a fair trial, we reverse.

Appellant was tried for the murder of three year old Davia Rockafellow, the daughter of appellant's girlfriend. At trial, the evidence showed that appellant picked the child up from the babysitter's house at 4:40 p. m. At 6:00 p. m. appellant brought the child to an emergency clinic. She was taken from the clinic to Parkland Hospital. Doctors testified that the child was suffering from "stocking" type burns on her feet, legs and buttocks caused by immersion in hot water and from a massive head injury. Appellant testified that he had spanked the child, then placed her in a tub of hot water. When he lifted the child out of the bathtub he realized that she had been burned. Wrapping her in a blanket, he carried her to the emergency clinic. He testified that, while carrying the child, he jumped over a wall and fell, which may have caused the head injury. The jury did not believe this testimony and convicted appellant of murder. Because of the nature of our disposition of this case, it is necessary to set out extensively incidents which occurred during the trial.

*I. Circumvention of Trial Court Rulings*

■ The record reflects numerous attempts by the prosecutor to circumvent rulings made by the trial court. Among them are the following:

[While examining an expert witness]

BY THE PROSECUTOR (RICK RUSSELL):

Q: I'll ask you whether or not you have an opinion based on your experience and medical training within a reasonable degree of medical certainty and probability as to whether or not this child was deliberately and purposely forced into a container of scalding water consistent with a bathtub.

[Objection sustained [1]]

BY THE PROSECUTOR (MR. RUSSELL):

Q: I'll ask you whether or not you have an opinion, a professional opinion based upon your clinical and medical training and experience within a reasonable degree of medical probability as to whether or not this child was assaultively dunked into a container of scalding water?

[Objection sustained]

. . . .

BY THE PROSECUTOR (MR. RUSSELL):

Q: I'll ask you if the photograph of the child depicts a classic study of a case of inflicted or assaultive immersion burns?

[Objection sustained]

. . . .

BY THE PROSECUTOR (MR. RUSSELL):

Q: This is an assaultive burn right here, is it not?

[Objection sustained]

. . . .

BY THE PROSECUTOR (MR. RUSSELL):

Q: In fact, you mean to testify, do you not, that this child was physically picked up assaultively and deliberately dunked—

1. Each time an objection was sustained, an instruction to disregard was given to the jury

and a motion for mistrial was overruled unless otherwise noted.

[Objection sustained]

. . . .

BY THE PROSECUTOR (MR. RUSSELL):

Q: Was that pattern injury, that stocking distribution of injury in those particular areas, the buttocks and the back and thighs and each leg, consistent in any way medically with accidental immersion in water or voluntary self immersion in water?

[Objection sustained]

. . . .

BY THE PROSECUTOR (MR. RUSSELL):

Q: . . ., have you—was this injury consistent with accidental or voluntary self-immersion, scalding—

[Objection sustained]

. . . .

BY THE PROSECUTOR (MR. RUSSELL):

Q: Okay. Based on that training and experience, was this injury that you saw of this child consistent with accidental injury or the voluntary self-immersion of that child into a tub of scalding water?

[Objection sustained]

At the outset we note that none of the questions above were answered; in each an objection to the question was sustained and an instruction to disregard given to the jury. Ordinarily, this will cure any error, except in cases where the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *White v. State*, 444 S.W.2d 921 (Tex.Cr.App. 1969). The questions set out above fall within the exception to the rule that unanswered questions may be cured by an instruction to disregard. The repeated use of the words "assaultively", "deliberately" and "purposefully", ruled impermissible by the trial court, which forced defense counsel to continuously object, could only have been calculated to leave impressions on the minds of the jury which could not be removed by the court's instructions. *See Wright v. State*, 609 S.W.2d 801, 806 (Tex.Cr.App. 1980); *Boyde v. State*, 513 S.W.2d 588, 590 (Tex.Cr.App.1974). Such prosecutorial misconduct cannot be labeled harmless. *Boyde v. State*, 513 S.W.2d at 593.

## II. Injecting Prejudicial Facts in the Form of Questions

The record also reflects numerous attempts by the prosecutor to present harmful facts, unsupported by the evidence, to the jury in the form of questions. The following are examples of such attempts:

[While examining an expert witness]

BY THE PROSECUTOR (MR. RUSSELL):

Q: What would the child's emotional reaction to the scalding have been, Dr. Hunt?

A: Just intense fear and fright and excitement, as if you put your hand in hot water.

Q: *Would she have been screaming bloody murder?* [Emphasis added]

[Objection sustained]

. . . .

[While examining the child's mother]

BY THE PROSECUTOR (MR. RUSSELL):

Q: Okay. I'll ask you if on a different occasion in the month of March, you had occasion to go to the store with Angie?

A: Yes, sir.

Q: Tell us about that occasion, please?

A: We went somewhere, to the drugstore, and [Davia] wanted to go, and I said no, I wanted to go for a few minutes and Don was there and—

Q: Watching her alone?

A: Yes, sir.

Q: Did you leave?

A: Yes, sir.

Q: Did you come back?

A: Yes, sir.

Q: What did you see when you came back?

A: Davia was upstairs crying in bed.

Q: And?

A: She had gotten sick.

Q: Vomited?

A: Yes, sir.

Q: *Did he make her lie in it there on the bed?* [Emphasis added]

[Objection sustained]

. . . .

[While examining the child's mother]

BY THE WITNESS:

We planned that Don was going to pick Davia up and he was going to bring her to the mall where I worked and have her stay there in the mall until I got off work.

BY THE PROSECUTOR (MR. RUSSELL):

Q: Who was she supposed to stay with at the mall?

A: Myself in the store.

Q: Okay. *You wanted to get him away from her, is that right?* [Emphasis added]

[Objection sustained]

. . . .

BY THE PROSECUTOR (MR. RUSSELL):

For the sake, I'll ask you for the surviving children that might have otherwise—

[Objection sustained]

There is no evidence in the record to support any of the facts asserted by the prosecutor in these leading questions put to the State's own witnesses. In *Sisson v. State*, 561 S.W.2d 197 (Tex.Cr.App.1978) the Court of Criminal Appeals reversed a conviction in part because the prosecutor asked "Have you heard that on August the 7th, 1976 this defendant . . . did in fact smoke marijuana . . . ." *Id.* at 199. The court held that the form of the question had the undeniable effect of asserting the matter as fact and further held that the instruction to disregard given to the jury could not have cured the error. The same is true of the questions in the present case. Without support in the testimony, the jury could only have believed, upon hearing these questions, that the prosecutor knew, in fact, that the child was "screaming bloody murder" when placed in the bathtub, that appellant made the child lie in vomit, that the mother wanted to get appellant away from the child, and that there were other children about whom they had not been told. The prejudicial effect of this belief by the jury could not have been cured by the instructions to disregard given by the court.

*Sidebar Remarks*

The record also reflects many prejudicial sidebar remarks made by the prosecutor. For example:

[While an expert witness testified]

BY THE WITNESS:

. . ., all of us were trying to take care of a severely injured child, we wanted to give some—

BY THE DEFENSE COUNSEL:

Well, I'm sure that you all wanted her—we all wanted her to live. What I'm saying is, from a medical standpoint—

BY THE PROSECUTOR (MR. RUSSELL):

Excuse me, I object to Mr. Blessing's statement. I know one guy that didn't care if this baby lived—

[Objection to the prosecutor's remark sustained]

. . . .

[While a defense witness testified]

BY THE PROSECUTOR (MR. RUSSELL):

Q: Davia was spoiled, is that your testimony?

A: Yes, she was quite spoiled.

Q: She had that coming? Is that what you do to a spoiled child?

A: Obviously things got a little bit out of hand.

Q: You bet they did, boy, you bet they did.

[Objection sustained]

. . . .

[While a defense witness testified]

BY THE PROSECUTOR (MR. RUS-
SELL):

Q: Mr. Maro, you manifested a reluc-
tance to give me hearsay on the tele-
phone, but you come down before the
Jury and give all the hearsay in the
world—

[Objection sustained]

. . . .

[While Appellant testified]

BY THE PROSECUTOR (MR. RUS-
SELL):

Q: Anyway, you learned about the brain
injury before you came down here to
trial, didn't you?

A: I still—the way they explained the
cause, I didn't know it was—that was
exactly what caused the tear or the
bruise or whatever it was, and whatev-
er happened to the brain.

Q: I'll explain that to you later, okay?

[Objection sustained]

. . . .

[While Appellant testified]

BY THE PROSECUTOR (MR. RUS-
SELL):

Q: I wonder who approached the neuro-
surgeon and got them to change their
testimony?

[Objection sustained]

. . . .

[While Appellant testified]

BY THE PROSECUTOR (MR. RUS-
SELL):

Q: Do these people [referring to the
jury] look stupid to you?

[Objection sustained]

. . . .

[During closing argument]

BY THE DEFENSE COUNSEL:

It is a reasonable deduction after we
have heard all of the testimony that
the first time that the doctor saw this
Defendant and that child was when
that baby was over at the natural fa-
ther's house, Gary's, and got injured
over there. It was taken to the emer-
gency clinic.

CO–PROSECUTOR:

Judge, I object, that's not the testimo-
ny. That is not a reasonable deduc-
tion—

PROSECUTOR (MR. RUSSELL):

Well, it is not even the truth, Mr. Bless-
ing.

[Objection to the prosecutor's
remark sustained]

By providing an ongoing commentary on
the evidence and the weight to be given to
it, the prosecutor could only have inflamed
the minds of the jury. The prejudice could
not have been alleviated by instructions to
disregard such comments.

■ Overall, the record reflects a course
of conduct by the prosecutor which could
serve no purpose other than to inflame and
prejudice the minds of the jurors and we do
not hesitate to reverse a conviction based on
such prosecutorial misconduct. *See Wright
v. State*, 609 S.W.2d 801 (Tex.Cr.App.1980);
*Cook v. State*, 540 S.W.2d 708 (Tex.Cr.App.
1976); *Boyde v. State*, 513 S.W.2d 588 (Tex.
Cr.App.1974); *Stein v. State*, 492 S.W.2d
548 (Tex.Cr.App.1973). In *Stein v. State*,
492 S.W.2d at 155–156 the Court of Crimi-
nal Appeals stated:

Recently, this Court has been faced
with numerous cases where improper ar-
guments and sidebar remarks by the
prosecutor have forced us to reassert the
critical importance of convicting an ac-
cused only upon that evidence presented,
without attempting to inflame or preju-
dice the minds of the jurors. E.g., *White
v. State*, Tex.Cr.App., 492 S.W.2d 488
(1973); *Hefley v. State*, 489 S.W.2d 115
(Tex.Cr.App.1973); *Lott v. State*, 490
S.W.2d 600 (Tex.Cr.App.1973).

We do not hold that a defendant is entitled
to an errorless or emotionless trial. But

when an entire record, such as the one before us, is permeated with improper tactics, emotional outbursts, and sidebar remarks, the verdict reached by the jury must necessarily be based upon consideration of such factors. We also reassert the critical importance of convicting an accused only upon the evidence presented.

Reversed and remanded.