**Alister Johnson MORRIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–87–00369–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 30, 1988.

Rehearing Denied Aug. 25, 1988.

Joseph Saranello, Greg Gladden, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, for appellee.

Before EVANS, C.J., and SAM BASS and DUNN, JJ.

## OPINION

SAM BASS, Justice.

Appellant was convicted of delivery of more than 50 pounds and less than 200 pounds of marijuana, an aggravated felony offense punishable by confinement for life or for a term of not more than 99 years or less than five years, and a fine not to exceed $50,000. After finding appellant guilty, the jury assessed his punishment at 25 years confinement and a fine of $50,000.

According to the testimony of a Houston police officer, an informant set up a meet-

ing between the officer and appellant, whom the police officer referred to as "Johnson," and another man, Barnes, for the purpose of purchasing some marijuana. Appellant asked the officer how much marijuana he wanted to buy, and the officer replied that he wanted 150 pounds. Barnes quoted a price of $700 per pound, and the officer asked how soon delivery could be made. Appellant said it would take about 45 minutes, and the officer said he would "have the money there."

In about an hour, appellant and Barnes returned in Barnes' car, which was also occupied by a woman, Ms. Sauceda. At appellant's direction, Barnes drove the car into the garage, and appellant told a worker to close the bay doors and dim the lights. Appellant then tore open one of four large plastic bags in the car trunk. The officer recognized the contents of the bag to be marijuana. The officer testified that appellant then told Ms. Sauceda to get a weighing scale out of the car, and that she did so. Appellant then put one of the plastic bags on the scale, which registered a weight of 30 pounds. Barnes then told the officer, "You've seen the weed. Now let's see some money." At that point, the officer started walking to his car, ostensibly to get the money. As he left, he activated an arrest signal. A team of officers then raided the garage and arrested all the occupants. The four bags in the trunk of the car contained a total of 127.6 pounds of marijuana.

Appellant, Barnes, and Ms. Sauceda were indicted for the aggravated offense of delivery of more than 50 pounds and less than 200 pounds of marijuana. Barnes pleaded guilty and was sentenced to 10 years confinement. Appellant and Ms. Sauceda both pleaded not guilty and were tried together in a joint trial.

Ms. Sauceda took the stand in her own defense and testified that she had been dating Barnes. She testified that on the day of the offense, Barnes told her that he had to help his friend, the appellant, take care of some business because appellant's car had broken down. She said that the officer, who testified that she had removed the scale from the car at appellant's request, was mistaken, and that she had only taken her coat from the car. She testified that it was appellant who took the scale out from the car and that he had not said anything to her.

The jury acquitted Ms. Sauceda but found appellant guilty as charged.

At the punishment stage of the trial, the State offered a certified copy of an official court record showing that appellant had previously been convicted of the misdemeanor offense of carrying a weapon. Appellant took the stand and admitted the truth of the prior conviction. When asked if he had ever sold marijuana before, he said that he sold two pounds of marijuana on a previous occasion. He further acknowledged his guilt in the instant case and said he was "sorry" he had committed the crime. In response to questioning by his attorney, appellant said that if he were given probation, he believed he could follow the law and not get into any further trouble, and that he did not think he would have any problems staying away from drugs.

On cross-examination by the prosecutor, appellant acknowledged that it was he who had loaded the marijuana into the car, and that he had placed the scale in the car and removed it from the car to weigh the marijuana. Appellant further testified that his marijuana supplier was named "Mike," but that he only had Mike's telephone number and did not know Mike's address.

Appellant brings three points of error contending that there were errors in the jury charge and the State's argument to the jury that deprived him of a fair trial and that he was denied effective assistance of counsel. He does not contest the sufficiency of the evidence.

We first consider appellant's second point of error in which he asserts that the prosecutor committed reversible error in going outside the record in making his jury argument.

Appellant complains that the State's argument included references to the quantity and value of the marijuana, the low pay of the police officers who testified, the impor-

tance of the case to the people of Harris County, the large numbers of "dope dealers" in Harris County, the problem of the availability of "dope" to school children, and the fact that the jury had already acquitted one "dope dealer" in this case, all of which was outside the record.

The State's argument at the close of the punishment phase of the trial included the following:

Ladies and gentlemen, if you ever wonder *why there is dope in our schools,* why dope is such a cancer here in Harris County, Texas, why we have to wonder about *our children and their availability to dope,* I'd suggest to you, please don't blame H.P.D., especially don't blame those two officers out there. They did their jobs. Don't blame the District Attorney's Office. Ladies and gentlemen, *look in the mirror and you can answer why there is dope in Harris County, Texas.*

Now, ladies and gentlemen, you get to decide what happens to a man who makes a $100,000 dope deal in Houston, Harris County, Texas.... *Because even if you're caught, even if officers risk their lives and catch you, it really doesn't matter a hill of beans, because the jury's going to excuse you. That's all probation is, ladies and gentlemen, is excusing someone.*

*There is already one extra dope dealer back on the street.* If you put this man on probation and he leaves in the elevator with you, *I'm sure he'll probably start working on the dope deal he's going to do this evening.* If you had a chance to end dope dealing here in Harris County, Texas, if I was somehow able to bring you all the dope dealers in Harris County, Texas, I couldn't fit them in the courtroom, couldn't fit them in the Summit, or even the Astrodome. If you were able to have within your control the decision as to what would happen to all of the dope dealers in Harris County, Texas, ladies and gentlemen, would you let them go? *There is one gone,* and this second one is gone if you put him on probation. Would you incarcerate them and do everything you can to end dope

and dope dealing here in Harris County, Texas? Well, ladies and gentlemen, I can't bring you all the dope deal [sic] in Harris County, Texas. I wish I could, but I can't. *I brought you two; one is gone.* You make the decision if this man goes back on the streets today with his dope dealing friends or whether this man goes to the penitentiary for a long time. (Emphasis added.)

In its closing argument, the State said:

Ladies and gentlemen, I have a couple more comments I'd like to make. First of all, on your way out of the courtroom, I'd like for each of you to go up to this man, this man who risked his life for all of us, this man who does a job we wouldn't do for all the money in the world, for a lot less than that, *go up to this man and call him a liar; because that's just what you've done.* And I'd suggest *if you can sit in judgment of Monique Sauceda and find her not guilty based on the testimony of her as opposed to this H.P.D. officer,* you must have believed this man was lying. *And I ask you to call this man a liar to his face.* (Emphasis added.)

At this point, appellant's counsel objected, and the court sustained the objection and instructed the jury to disregard the comment. The State continued:

Ladies and gentlemen, you can tell these officers exactly what you think of them, the job performance, and what they do for us. You can tell them that it doesn't matter if they catch people who sell $100,000.00 worth of dope, you're going to excuse them. Or you can tell them you're going to stick them in the penitentiary for as long a period as possible and fine as much money as you can. That's the answer. That's all I have.

In its argument during the guilt/innocence phase of trial, the State made four references to the value of marijuana as being $100,000, or $105,000 or being 150 pounds at $750 a pound. After the second and third references, appellant's trial counsel objected to such arguments on the basis that there was no evidence introduced to

show the value of the marijuana. The court sustained both objections, and in response to the trial counsel's request, instructed the jury to disregard the prosecutor's statements. In spite of the sustained objections to references to the value of the marijuana, the State, in its argument during the punishment phase, made three additional references to the value of the marijuana, to which appellant's counsel made no objection.

■ The State contends that the argument complained of was a summary of the evidence (the quantity and value of the marijuana), a reasonable inference from the evidence (that appellant contributed to the problem of dope in the schools), a response of arguments of opposing counsel (probation is just excusing an offender, and if put on probation, this defendant will make another drug deal tonight), and a plea for law enforcement (references to low police salaries and the acquittal of the codefendant).

The State's references to the quantity and value of the marijuana went beyond the evidence that was before the jury. Counsel for appellant had objected twice to such references during closing arguments at the guilt/innocence phase of the trial. Those objections had been sustained, and the jury had been admonished to consider only the evidence before them. In spite of the sustained objections, the State persisted in its improper statements. The State cannot now say that such statements were merely summations of the evidence.

Likewise, there is no evidence in the record from which it may be reasonably inferred that appellant sold drugs to school children. And the State's admonition to the jury to "look in the mirror" to see why there is a drug problem in Harris County can only be interpreted as accusing the jury of improperly acquitting Ms. Sauceda. The Court of Criminal Appeals has found that arguments inviting the jury to speculate regarding the number of individuals an accused has affected by his illegal drug activities is improper. *Thomas v. State,* 527 S.W.2d 567 (Tex.Crim.App.1975); *Rod-*

*riguez v. State,* 520 S.W.2d 778, 780 (Tex. Crim.App.1975).

The State argues that its statements that probation "is excusing someone" and that if given probation, "he'll probably start working on the dope deal he's going to do this evening" were in response to defense counsel's argument in favor of probation and were obvious exaggerations. We note that these statements were made prior to the argument by defense counsel. Furthermore, a similar "exaggeration" was found to be improper in *Livingston v. State,* 531 S.W.2d 821, 823 (Tex.Crim.App. 1976). In *Livingston,* the prosecutor said, "If you turn the Defendant loose he is going to go out and kill somebody." But this error was cured by an objection and an instruction to disregard. *Id.*

The State also contends that the references to filling the Astrodome with drug dealers was an obvious exaggeration and that, combined with the references to the jury's having let one drug dealer go, were simply a plea for law enforcement. In determining whether a prosecutor's argument is error, it is necessary to view the argument from the jury's standpoint. *Brown v. State,* 475 S.W.2d 761, 762 (Tex. Crim.App.1971). A more logical view of the State's argument is that the jury, having acquitted one "drug dealer," should impose a very severe punishment on appellant. The prosecutor went beyond the bounds of asking the jury to consider the circumstances surrounding the offense in fixing punishment. *See Brown v. State,* 530 S.W.2d 118, 120 (Tex.Crim.App.1975).

Considering the argument as a whole, the statements of the prosecutor could serve no purpose other than to inflame the minds of the jurors. *See Dakin v. State,* 632 S.W.2d 864, 868 (Tex.App.—Dallas 1982, pet. ref'd).

■ Jury argument must fall within one of four general areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to arguments of opposing counsel; and (4) pleas for law enforcement. *Landry v. State,* 706 S.W.2d 105, 111 (Tex.Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 242, 93

L.Ed.2d 167 (1986). When the State's jury argument exceeds the permissible bounds, it will not constitute reversible error unless, in the light of the entire record, the argument is extreme or manifestly improper, is violative of a mandatory statute, or injects new facts harmful to the accused in the proceedings. *Mathews v. State*, 635 S.W.2d 532, 539 (Tex.Crim.App.1982). The test for reversible error in jury argument is whether there is a reasonable possibility that the argument complained of might have contributed to the punishment assessed. *Spelling v. State*, 719 S.W.2d 404, 408 (Tex.App.—Fort Worth 1986, pet. granted); *see also Garrett v. State*, 632 S.W.2d 350, 354 (Tex.Crim.App.1982); Tex. R.App.P. 81(b)(2).

In this case, much, if not most, of the State's argument to the jury consisted of statements asking the jury to consider matters outside the record in assessing punishment. Viewing the argument in the light of the entire record, we must conclude that there is a reasonable possibility that the improper argument contributed to the punishment assessed. We accordingly sustain appellant's second point of error.

In his first point of error, appellant contends that he was denied a fair trial because of errors in the jury charge concerning information about probation and the law of parole. He argues that these errors were compounded by improper arguments to the jury. Under this point, appellant also asserts that because his trial counsel did not object to these errors, he was denied effective assistance of counsel.

■ First, he asserts that the charge is erroneous because it does not define "probation," or make any explanation of the conditions that "shall and/or may be" imposed by the court. Appellant argues that by failing to explain the various possible conditions of probation and what effect a revocation of such probation would mean, the court's charge enhanced dramatically the improper argument of the prosecutor that probation is "excusing someone." Appellant cites *Ellis v. State*, 723 S.W.2d 671 (Tex.Crim.App.1986), in support of his argument.

In *Ellis*, the court's charge listed nine conditions of probation, but omitted five conditions and stated that the court was limited to the listed conditions. The Court of Criminal Appeals concluded that these omissions, compounded by other errors regarding conditions of probation that had occurred throughout the trial, denied appellant a fair trial, which required a reversal of the conviction. *Id.* at 673.

The *Ellis* decision is distinguishable from the present case. Here, the court's charge did not list some conditions and omit others; it stated only that probation meant "the release of a convicted defendant by a court under conditions imposed by the court for a specified period during which the imposition of sentence is suspended." Appellant does not contend that the definition is inaccurate; only that it is ambiguous and misleading.

We do not find the court's instruction with regard to probation to be either ambiguous or misleading. Accordingly, we overrule appellant's contention.

■ The second error complained of in the court's charge relates to its instruction on parole. The court gave the instruction on the law of parole pursuant to Tex.Code Crim.P.Ann. art. 37.07 (Vernon Supp.1988).

The Texas Court of Criminal Appeals has held that the article 37.07 instruction on the law of parole is unconstitutional because it violates the separation of powers and the due course of law provisions of the Texas Constitution. *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1988) (op. on reh'g). The standard of review applied to article 37.07 section 4 error is provided in Tex.R. App.P. 81(b)(2), which reads:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

At the punishment stage of the trial, the court read the statutory parole instruction

to the jury and also read the following instruction:

You are not to discuss among yourselves how long the accused would be required to serve the sentence that you impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas, and must not be considered by you.

Following this instruction, the State, as a part of its argument to the jury, said:

Let me tell you something that's in this charge. The charge may read, this defendant is eligible for parole after he serves one-third or 20 years. That's what it says. It says he's eligible for parole once his actual time is served, plus his good time, equals one-third or 20 years. It doesn't say after he serves one-third. It says after he serves and his good time equals one-third. Ladies and gentlemen, this is your county as much as mine. My children and your children are raised here. Our family, our friends live here. You decide what the price is going to be on people who want to sell $100,000.00 worth of dope. Is it freedom, or is it a very long period of time in the Texas Department of Corrections and a very high fine?

The State's argument was clearly inviting the jury to apply the parole law to this appellant, and we cannot say beyond a reasonable doubt that the error made no contribution to the punishment. Accordingly, we sustain appellant's contention with regard to error in the jury instruction on parole law.

■ In his third and final point of error, appellant contends that his trial counsel failed to render effective assistance of counsel because: (1) he did not object to the errors set out in points of error one and two, including that portion of the charge relating to probation and to parole; (2) he failed to appear at a pre-trial hearing on a discovery motion, thus waiving all discovery rights, and was therefore unable to learn the name of the police informant in advance of trial; and (3) he failed to

present any identifiable trial strategy or any evidence on behalf of the defense.

We overrule this point of error because we conclude that even if trial counsel's representation was defective, there is no reasonable probability that the result of the proceeding at the guilt/innocence stage of the trial would have been different. We thus hold that appellant failed to meet the second prong of the two-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In light of our holding on points of error one and two, we need not consider this point as it relates to the punishment stage.

The judgment of the trial court on the issue of appellant's guilt is affirmed. The judgment of the trial court at the punishment stage is reversed and the cause is remanded for a new punishment hearing. *See* Tex.Code Crim.P.Ann. art. 44.29(b) (Vernon Supp.1988).

EVANS, Chief Justice, concurring.

I concur with the result reached by the majority based on the Court of Criminal Appeals' holding in *Rose v. State* that the jury instruction on the parole law is unconstitutional and that the harm analysis is that found in Tex.R.App.P. 81(b)(2). *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App. 1988) (op. on reh'g). But I disagree with the conclusion that the State's jury argument went outside the record and constituted reversible error.

During the State's argument in the guilt/innocence phase of trial, the prosecutor made several references to the quantity and value of the marijuana, as stated in the majority opinion. After the State's second reference, appellant's trial counsel objected on the ground of no evidence. The trial court promptly sustained appellant's objection and instructed the jury to consider only the evidence presented. In my opinion, the court's ruling sufficiently admonished the jury to consider only the evidence before them regarding the quantity and value of the marijuana involved.

I would also hold that the State's argument about drugs and "dope dealers" was

not so extreme or improper as to require a reversal of the judgment. The appellant's testimony, at the punishment phase of the trial, reflects his obvious attempt to evidence remorse at his participation in the particular crime charged and to provide assurance that he would never again become involved in illegal drug trafficking. The prosecutor's argument was a predictable response to those efforts. The State's argument simply called upon the jurors to use their common knowledge about the impact of the drug problem on the community. Appellant did not object to the prosecutor's argument, and instead, he specifically responded to it. In such response, appellant's trial counsel argued to the jury that appellant was not "some kind of extraordinary dope dealer"; that he did not represent all the dope dealers in Harris County; and that the jury should not be misled by the prosecutor to believe that "by putting him away for a long time, you're somehow ridding this county of drug dealers." Defense counsel further argued that the "important thing in this case is to look at what has gone on, what has happened, what you've heard from that witness stand, not the fact that there is drug dealing in the rest of Harris County or everything else that's gone on."

Since appellant did not object to the State's argument and, instead, responded to it in kind, I see no reason for reversing the judgment on that ground.

Except in the respects noted, I concur in the holding and the reasoning of the majority opinion.