

## NUMBER 13-11-00409-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RAY VINCENT VALLEJO,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

### On appeal from the 275th District Court of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Perkes
### Memorandum Opinion by Justice Garza

Appellant, Ray Vincent Vallejo, was convicted of capital murder and sentenced to

life imprisonment without possibility of parole.  *See* TEX. PENAL CODE ANN. § 19.03(a)(2)

(West Supp. 2011).  On appeal, Vallejo argues that:  (1) the evidence was legally

insufficient to support his conviction; (2) the trial court erred by allowing evidence of his

gang affiliation; (3) he was denied a fair and impartial trial; and (4) the trial court erred by allowing testimony that fellow gang members did not testify due to fear of retaliation. We affirm.

## I. BACKGROUND

In the early afternoon of June 21, 2009, police in Weslaco, Texas, were dispatched to a residence in response to a 911 call during which the caller had hung up. When they arrived they saw a woman, identified as Manuela Bocanegra, standing outside the residence and bleeding profusely. Officers then entered the residence and found a second injured female, lying face down on the floor and covered in blood, but still breathing. The second victim was identified as Donna Bocanegra, Manuela's daughter.

Though Manuela recovered, Donna later died from her injuries. An autopsy revealed that Donna had suffered three gunshot wounds, including a fatal gunshot wound to the head. Forensic analysis showed that the two women had been shot with two different weapons: Donna with a .38 Special revolver and Manuela with a .45 caliber weapon.

Juan Aldrete Jr., a neighbor, recalled that he heard the sound of "aluminum hitting aluminum" coming from the Bocanegras' residence on the day in question. He went to see what happened and observed that the door to the Bocanegras' house had been "kicked open." Several minutes later, Aldrete saw two males running out of the back of the Bocanegras' house. In a photo lineup presented later by police, Aldrete identified Vallejo as one of the men who had run from the house. Another neighbor, Gregorio Piata, also saw two males running from the Bocanegras' residence at the time

2

of the incident. Piata testified that the males got into a very loud, "s[o]uped-up" red Ford Mustang with tinted windows and "just took off, just screeching tires and they left."

Manuela Bocanegra testified that she and Donna were doing laundry when two men kicked open a door, entered their home, and said "this is a stick up." The men were wearing black gloves and "their hands were covered with black handkerchiefs," but Manuela could see that they were both carrying handguns. One of the intruders fired a shot into the ceiling. Manuela asked the men what they wanted, but they responded only with expletives. A struggle ensued, during which one of the men shot Manuela repeatedly. Manuela did not see the men shoot Donna, but she heard other gunshots and later saw Donna bleeding on the floor. According to Manuela, the men told her: "I don't want no more words from you, you f[***]ing old lady. Because you're not the only one. All your family is next." She testified: "Every time I would open my mouth to ask either one of them [what they wanted], they would shoot at me." She suffered gunshot wounds to the neck, chest, shoulder, and ear. In the struggle, one of the assailants was shot in the hand, and he then said: "Let's get the f[***] out of here. There is nothing here. Let's go. Hurry." The other gunman said "Let's get out. Let's go." They then ran out the back door of the house, and Manuela heard a "very loud" noise from a car driving away.

Manuela testified that she was about "a foot away" from the men when she first asked them what they wanted. Although the gunmen were wearing masks, she could see each man's eyes and nose, and she stated: "[N]ever in my life will I forget those two faces." She positively identified Vallejo as one of the assailants, both in a photo lineup during the initial investigation and again at trial. Manuela identified Lionzo Cantu

3

as the other perpetrator.[1]

Shortly after the incident, an investigator with the Weslaco Police Department observed a maroon Ford Mustang traveling at a high rate of speed near the area where the crime was committed. The investigator, who was off-duty and driving his personal vehicle at the time, had to maneuver out of the way in order to avoid colliding with the Mustang. Police later observed the maroon Mustang at the home of Fidel Cuellar. Investigator Albino Flores testified that Cuellar was a known member of a gang, Tri City Bombers, or "TCB," which is known for violence and, in particular, home invasions.

Lieutenant Ricardo Suarez of the Donna Police Department testified that he is in charge of the Crime Stoppers tip line. He stated that, over several years, he received information that Cuellar and other TCB gang members were participating in home invasions. He also received information that Cuellar drove a red Ford Mustang.

Police set up surveillance at the house of two suspected TCB members, Joel Espinoza and Felipe Mata. Eventually, the red Mustang was observed parked at the house. Police brought Espinoza in for questioning and showed him a photo lineup. Espinoza identified Vallejo as being involved in the shooting at the Bocanegras' house.

After police observed the red Mustang commit a traffic violation, they stopped the vehicle and seized it. Piata was asked to come to the police department to identify the vehicle. Piata said that, based on appearance and sound, the seized vehicle was the same vehicle he saw departing the Bocanegras' residence on June 21, 2009.

Police apprehended Vallejo and Cantu. When Vallejo was apprehended, he had an injury on his hand consistent with a gunshot wound. However, DNA swabs taken

---

[1] Cantu was also charged with capital murder. He pleaded guilty to the lesser-included offenses of murder and attempted murder and was sentenced to fifty years' imprisonment.

4

from the crime scene did not match Vallejo's DNA.

Vallejo was convicted of capital murder, attempted capital murder, and aggravated robbery. The trial court, upon defense counsel's motion, dismissed the attempted capital murder and aggravated robbery counts and sentenced Vallejo to life imprisonment without parole. This appeal followed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

By his first issue, Vallejo argues that the evidence was legally insufficient to support his conviction.

#### 1. Standard of Review and Applicable Law

In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When faced with conflicting evidence, we presume that the trier of fact resolved any such conflict in favor of the prosecution, and we defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240

(Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Here, a hypothetically correct jury charge would state that Vallejo is guilty of the indicted offense if he: (1) intentionally or knowingly caused Donna Bocanegra's death; (2) in the course of committing or attempting to commit robbery. TEX. PENAL CODE ANN. § 19.03(a)(2). A person commits robbery if, in the course of committing theft, and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* § 29.02(a) (West 2011). "In the course of committing theft" means "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1) (West 2011).

The jury was charged on the law of parties, under which a person is criminally responsible for an offense committed by the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (West 2011). When we review the sufficiency of the evidence supporting a defendant's participation as a party to the crime, "we may consider 'events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *King v. State*, 29 S.W.3d

6

556, 564 (Tex. Crim. App. 2000) (quoting *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)).

### 2. Analysis

Vallejo's complaint regarding the sufficiency of the evidence is confined to the issue of identity: he argues that the evidence was insufficient to support the jury's finding that he was the one that accompanied Cantu in committing the attempted robbery and murder. He contends that his identity as Cantu's accomplice was established only by the testimony of Manuela Bocanegra, which he argues was not credible or reliable. In particular, Vallejo notes that: (1) according to Manuela's testimony, the perpetrators were wearing masks; (2) Manuela provided police with a description of her assailant which led to a computer-generated sketch which "in no way resembles [Vallejo]"; (3) she initially testified that her assailant had a piercing in his right eyelid, but later remembered that it was in his left eyelid; and (4) she initially testified that she told investigators that the suspects had dark complexions, but later clarified that she told investigators that the suspects looked "Mexican."

We first note that Vallejo is mistaken in claiming that his identity was established only by Manuela's testimony. Aldrete—who observed two males running out of the back of the Bocanegras' house shortly after he heard the sound of "aluminum hitting aluminum" coming from the house—also identified Vallejo as one of the men fleeing the scene. We also note that, even though the evidence established that the perpetrators were wearing masks, Manuela testified that she could see the eyes and noses of the men. Her inability to see her assailants' hair, mouth, and ears does not deprive her positive identification of its probative power. *See Hacker*, 389 S.W.3d at 865 (generally

7

setting forth standard of review); *see also Alexander v. State*, No. 01-09-00630-CR, 2010 Tex. App. LEXIS 10157, at *7 (Tex. App.—Houston [1st Dist.] Dec. 23, 2010, pet. ref'd) (mem. op., not designated for publication) (noting that a witness "was not required to see the [suspect's] entire face to make a positive identification"); *Rubio v. State*, No. 14-04-00030-CR, 2004 Tex. App. LEXIS 11687, at *7 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, pet. ref'd) (mem. op., not designated for publication) (noting that appellant's argument that a witness identification was "unreliable because the burglar wore a ski mask and [the witness's] degree of attention was insufficient" goes to the witness's credibility and is judged by the jury).

In any event, "[t]he jury is the sole judge of witnesses' credibility and the weight to be given testimony." *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012). The jury was free to believe or disbelieve all or part of Manuela's testimony. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010) ("[The finder of fact] is entitled to believe or disbelieve all or part of the witness's testimony—even if that testimony is uncontroverted—because he has the opportunity to observe the witness's demeanor and appearance."). Even if we were to agree with Vallejo that Manuela's testimony was unreliable, we may not act as a "thirteenth juror" by substituting our judgment for that of the jury. *See Brooks*, 323 S.W.3d at 905. Instead, our task is only to decide whether *any* rational juror could have found the essential elements of the crime beyond a reasonable doubt. *See id.* at 895 (citing *Jackson*, 443 U.S. at 319). We find that a rational juror could have concluded from all of the evidence adduced that Vallejo was the person who accompanied Cantu in carrying out the attempted robbery and murder.

8

### 3. Motion for New Trial

As part of his argument regarding his first issue, Vallejo asks that we "place special attention" to his motion for new trial and an affidavit by Cantu which was attached thereto. Cantu's affidavit read, in relevant part:

> I wish to state that after pleading guilty to the abovementioned charges, I take full responsibility for the actions of the crime. I was the person who shot both victims. I had previously spoken to Mr. Vallejo regarding my involvement in the crime at which time I denied any involvement in the crimes. I also never told anyone else of my involvement, including my attorney. Mr. Vallejo was not involved with these crimes. He was not present at the crime scene nor did he have any knowledge at all of the crimes, either before or after the crimes occurred. To my knowledge, he has never been to the victim's house nor does he know the victims. These crimes are not gang motivated crimes. I committed these crimes for my own personal reasons.
>
> After Mr. Vallejo was found guilty and sentenced to life, I knew that I had to tell of my involvement with the crime because Mr. Vallejo was not involved and my conscience would not allow me to remain quiet. Mr. Vallejo is an innocent man and was no way involved in this crime.
>
> I did not come forward with this information prior to his trial or before my plea because I had insisted to everyone that I was not involved, however, when he was found guilty, I decided I must plead guilty to the crimes that I did commit and take the punishment which I deserved. After pleading guilty to the charges, I informed my attorney . . . that Mr. Vallejo was not involved with these crimes.

Vallejo's motion for new trial was based, in part, on grounds that "[n]ewly material evidence favorable to the accused has been discovered." *See* TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2006). However, on appeal, Vallejo does not contend that the trial court erred in denying his motion for new trial on these grounds, nor does he explicitly make the dubious argument that Cantu's post-trial affidavit should be

9

considered in our evaluation of the sufficiency of the evidence before the jury. Accordingly, any complaint in that regard is waived. *See* TEX. R. APP. P. 38.1(i).[2]

Vallejo's first issue is overruled.

## B.    Admission of Evidence

By his second issue, Vallejo contends that the trial court erred when it admitted evidence of his gang affiliation. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006) (internal citations omitted). "If the trial court's decision was within the bounds of reasonable disagreement, the appellate court should not disturb its ruling." *Id.*

---

[2] Even if Vallejo did argue on appeal that the trial court erred in denying his motion for new trial, that argument would not be meritorious for at least two reasons:

First, there was no hearing on Vallejo's motion for new trial at which he offered Cantu's affidavit into evidence. *See Rouse v. State*, 300 S.W.3d 754, 762 (Tex. Crim. App. 2009) ("[P]ost-trial motions such as these are not self-proving and any allegations made in support of them by way of affidavit or otherwise must be offered into evidence at a hearing."); *McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985) ("[An affidavit may] suffice to establish every facet of a . . . cognizable ground for new trial, . . . an accused may have said affidavit introduced into evidence, and the matter may be resolved exclusively on that basis. In order to so introduce his affidavits, however, a *hearing* is required.").

Second, Vallejo's motion for new trial did not establish, or even argue, that Cantu's testimony (1) was unknown to him at the time of trial, (2) was unobtainable with due diligence, (3) was admissible, or (4) would probably have brought about a different result in a new trial. *See* TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2006) ("A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial."); *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003) ("Under [article 40.001], a defendant is entitled to have his motion for new trial granted if[:]  (1) the newly discovered evidence was unknown to him at the time of trial; (2) his failure to discover the new evidence was not due to his lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial."); *see Wilson v. State*, 633 S.W.2d 351, 352 (Tex. App.—Corpus Christi 1982, pet. ref'd) ("[U]nless the defendant satisfies all four requirements for a new trial based on newly discovered or available evidence, he is not entitled to a new trial simply because a convicted co-defendant is ready, willing, and able to testify to facts, which, if believed by the jury, would exonerate the defendant."); *see also Drew v. State*, 743 S.W.2d 207, 228 (Tex. Crim. App. 1987) ("It is not unusual for one of two convicted accomplices to assume the entire fault and thus exculpate his codefendant by the filing of a recanting affidavit or other statement. It should go without saying that not every recanting or other statement requires a new trial of the other defendant for whose benefit it is produced.").

10

During the State's case-in-chief, the prosecutor asked the trial court to admit evidence that Vallejo was a TCB gang member. Defense counsel objected, and a hearing was held outside the presence of the jury. At the hearing, defense counsel argued that the evidence was inadmissible character evidence because its only relevance was in establishing that Vallejo was guilty because he is a gang member. *See* TEX. R. EVID. 404(b). The prosecutor argued in response that the evidence was admissible because it tended to show Vallejo and Cantu's motive in selecting the Bocanegras' house for their assault. The prosecutor further explained:

> [T]here was a raid done of a house that belonged to one of the other daughters of the Bocanegra[s], and her and her husband. And it was believed that maybe they had money, had drugs, were involved. And we—it's our contention that that is why [Vallejo and Cantu] came to this house. They believed that they got the wrong house—or they believed those people, those people had initially lived there.

Investigator Flores testified outside the presence of the jury that police had received information that the suspects were affiliated with the TCB gang and that this particular gang was known for carrying out home invasions and robberies. He conceded on cross-examination that he had no information that the Bocanegras were from a rival gang, and he could not explain why Vallejo and Cantu chose the Bocanegras' house to carry out their attack. The prosecutor noted that she would be eliciting testimony that the car used by the assailants was owned by a TCB member. The trial court admitted the evidence over defense counsel's objection.

On appeal, Vallejo contends that the evidence should have been excluded under Texas Rules of Evidence 403 and 404(b).[3] Rule 403 provides that, "[a]lthough relevant,

---

[3] At trial, defense counsel did not explicitly argue that the evidence was inadmissible under Rule 403; however, she repeatedly argued that the evidence was irrelevant other than to show character conformity. We assume, but do not decide, that Vallejo's Rule 403 objection was preserved for our

11

evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Under Rule 404(b), evidence of an accused's "other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." *Id.* Gang membership evidence is admissible under Rule 404(b) if it is relevant to show a non-character purpose that in turn tends to show the commission of the crime. *Ortiz v. State*, 93 S.W.3d 79, 94 (Tex. Crim. App. 2002) (citing *Vasquez v. State*, 67 S.W.3d 229, 239–40 (Tex. Crim. App. 2002); *Medina v. State*, 7 S.W.3d 633, 643–44 (Tex. Crim. App. 1999)).

Even assuming that the trial court erred in admitting the evidence of Vallejo's gang affiliation, we nevertheless conclude that the error would not be reversible because Vallejo has not shown that his substantial rights were affected by the error. *See* TEX. R. APP. P. 44.2(b). Texas Rule of Appellate Procedure 44.2(b) states that we must disregard any non-constitutional error in a criminal case that does not "affect substantial rights," *id.*, and the Court of Criminal Appeals has held that "[a] substantial right is affected when the error had a substantial or injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Here, as set forth above, Manuela Bocanegra testified that she was, at one point, about "a foot away" from her assailants and could see each man's eyes and nose. She unequivocally identified Vallejo—both in a police-administered photo lineup and

review. *See* TEX. R. APP. P. 33.1 (regarding preservation of error).

again at trial—as one of the two attackers who broke into her house, shot her multiple times, and shot and killed her daughter. In light of this evidence, we cannot conclude that the evidence of Vallejo's gang affiliation "had a substantial or injurious effect or influence in determining the jury's verdict." *See id.* Accordingly, any error in admitting the evidence was harmless. Vallejo's second issue is overruled.

By his fourth issue, Vallejo contends that the trial court erred in admitting testimony that fellow gang members—Espinoza and Mata in particular—did not testify at trial due to their fear of retaliation. Vallejo complains specifically of the following testimony given by Investigator Billy Pemelton:

| | |
|---|---|
| [Prosecutor:] | Have you had dealings with gang members and gang activity? |
| [Pemelton:] | Yes, I have. |
| [Prosecutor:] | Can you tell the ladies and gentlemen of the jury based on your experience in law enforcement, hypothetically speaking, if a gang member, known gang member were to rat out or testify against another known gang member, what would, hypothetically speaking, what would happen? |
| [Pemelton:] | In my 19 years of experience, I've seen it that there would be repercussions if you testify against a known fellow gang member. |
| [Defense counsel]: | Your Honor, I will object, that it calls for speculation. |
| THE COURT: | Overruled. |
| [Pemelton:] | In my experience what I have seen in my career is that they will threaten your family members, or yourself. |

Vallejo argues that his trial counsel's objection to Investigator Pemelton's testimony should have been sustained under Texas Rule of Evidence 602 because the

13

testimony was speculative. *See* TEX. R. EVID. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). He does not, however, explain how the admission of this testimony caused him to suffer harm. Having reviewed the record—and especially in light of Manuela Bocanegra's testimony and identification of her attackers—we cannot say that this testimony "had a substantial or injurious effect or influence in determining the jury's verdict." *See King*, 953 S.W.2d at 27; *see also* TEX. R. APP. P. 44.2(b). We therefore overrule this issue for the same reasons set forth above with respect to issue two.

## C. Prosecutorial Misconduct

By his third issue, Vallejo argues that he was deprived of a fair and impartial trial due to comments made by one of the prosecutors and because the prosecutor "repeatedly violat[ed] the rules of evidence and the Confrontation clause."

First, with regard to the alleged objectionable comments, one of Vallejo's trial attorneys testified that he heard one of the prosecutors say "[t]hat f[***]ing bitch" during a bench conference. Defense counsel stated that he was seated in his regular position, close to the jury, at the time he overheard the remark. The remark was allegedly made in the direction of Vallejo's other trial attorney, who is female. The trial court bailiff also testified that he heard "bickering" during the bench conference and that the prosecutor at one point said "[f***]ing bitch." The prosecutor categorically denied making such a remark and accused defense counsel of lying.[4] The trial court denied Vallejo's motion for mistrial.

---

[4] The prosecutor did not directly accuse the bailiff of lying.

14

A mistrial is an extreme remedy, and "[o]nly in extreme circumstances, where the prejudice is incurable, will mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (en banc). "A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful or futile.'" *Id.* (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). We review the denial of a motion for mistrial under an abuse of discretion standard. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010); *Espinosa v. State*, 328 S.W.3d 32, 38 (Tex. App.—Corpus Christi 2010, pet. ref'd).

Texas Rule of Appellate Procedure 33.1 provides that, as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely and specific request, objection, or motion. TEX. R. APP. P. 33.1. A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent. *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007) (citing *Wilkerson v. State*, 881 S.W.2d 321, 326 (Tex. Crim. App. 1994), 23 C.J.S. *Criminal Law* § 1388 (1989)). Here, the prosecutor allegedly made the objectionable comment during trial proceedings on Friday, February 25, 2011. Defense counsel allegedly overheard the remark at the time it was made, so the potential grounds for mistrial would have been immediately apparent to defense counsel at that time; however, the issue was not brought to the trial court's attention until the following Monday, February 28, 2011. Accordingly, Vallejo's motion for mistrial was untimely. *See id.* (holding that appellant's motion for mistrial was untimely where the grounds for mistrial first became apparent during a witness's testimony but appellant failed to move for a mistrial until after that witness and another witness had concluded their testimony).

15

Even if Vallejo had timely requested a mistrial—and even assuming *arguendo* that the prosecutor did, indeed, make the alleged objectionable remark—Vallejo has not established that any prejudice resulting from the remark was incurable. *Hawkins*, 135 S.W.3d at 77 (noting that a mistrial is required "[o]nly in extreme circumstances, where the prejudice is incurable").

Vallejo further argues by his third issue that the State "repeatedly . . . elicited hearsay testimony from police officers that told the jury that fellow gang members had implicated [Vallejo] in the commission of the crime."[5] Vallejo states that "[t]he hearsay statements were originally objected to and the judge sustained the objections but the State continued to elicit the hearsay testimony without further objection from the defense." Vallejo does not argue that the trial court erred in admitting the testimony, nor does he contend that his trial counsel was ineffective for failing to object each time the testimony was elicited. Rather, he appears to contend that the prosecutor committed misconduct, rendering his trial unfair and depriving him of his Sixth Amendment right to confront witnesses, *see Crawford v. Washington*, 541 U.S. 36, 59 (2004), by repeatedly eliciting the alleged hearsay testimony.

Vallejo cites two Texas Court of Criminal Appeals cases and two court of appeals cases in support of his argument. First, in *Wright v. State*, 609 S.W.2d 801 (Tex. Crim.

---

[5] In particular, Vallejo complains that the prosecutor elicited testimony from police officers that, as a result of their interrogation of TCB members Joel Espinoza and Felipe Mata, they determined that Vallejo was a suspect in Donna Bocanegra's murder. He complains that the prosecutor, at various times, attempted to have "back door hearsay" admitted by prefacing questions to witnesses with statements such as: "Without getting into what anyone told you . . . ."

Vallejo also complains of the prosecutor's statement that she intended to call Espinoza and Mata as hostile witnesses and that, if called as a witness, Espinoza and Mata planned to assert their Fifth Amendment privilege not to testify. However, those statements were made outside the presence of the jury and so cannot form the basis of a complaint that Vallejo was deprived of a fair and impartial trial.

App. 1980), the Court of Criminal Appeals reversed a conviction when the prosecutor's argument—suggesting that the defendant could be "dangerous in the community" even though he had no prior convictions because "Jack the Ripper and the Boston Strangler" also had no prior convictions—"evince[d] a course of conduct . . . which could serve no purpose other than to inflame and prejudice the minds of the jurors." *Id.* at 804. The Court reached a similar conclusion in *Koller v. State*, 518 S.W.2d 373, 376, 378 (Tex. Crim. App. 1975) (finding that the prosecutor's "repeated[] attempt[s] to remind the jury of the appellant's failure to testify . . . could have served no other purpose than to deprive the appellant of a fair trial by prejudicing the jury against him"). In *Dakin v. State*, 632 S.W.2d 864 (Tex. App.—Dallas 1982, pet. ref'd), the Dallas Court of Appeals reversed a murder conviction where the prosecutor "provid[ed] an ongoing commentary on the evidence and the weight to be given to it." *Id.* at 868. And, in *Morin v. State*, 960 S.W.2d 132 (Tex. App.—Corpus Christi 1997, no pet.), this Court reversed a murder conviction where the State elicited testimony from a police investigator that a friend of the appellant had informed the investigator that the appellant was involved in the crime. *Id.* at 137–38.

All four cases cited by Vallejo are plainly distinguishable. In *Wright*, *Koller*, *Dakin*, and *Morin*, the appellant objected to the introduction of the challenged evidence and obtained an adverse ruling from the trial court either on the evidentiary issue or on a motion for mistrial. *See Wright*, 609 S.W.2d at 804 ("The appellant's objection to this argument was overruled."); *Koller*, 518 S.W.2d at 377 ("[T]he court again denied the appellant's renewed motion for mistrial, but sustained his objection and instructed the jury to disregard the testimony."); *Morin*, 960 S.W.2d at 137 (trial court granted defense

17

counsel a running objection to the admission of alleged hearsay testimony); *Dakin*, 632 S.W.2d at 865 n.1, 868 (trial court sustained appellant's objection to prosecutor's argument but denied motion for mistrial). That is to say, the appellants in those cases preserved their evidentiary issues for appellate review. *See* TEX. R. APP. P. 33.1. Here, on the other hand, as Vallejo concedes, the allegedly inadmissible testimony was repeatedly elicited "without further objection from the defense." *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) ("An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection.") (citing *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)). Moreover, Vallejo does not direct us to any point in the record where his trial counsel asked the trial court to admonish the prosecutor, for a limiting instruction, or for a mistrial on the basis of prosecutorial misconduct in the eliciting of hearsay testimony.[6] Accordingly, his third issue has not been preserved for our review. *See Hernandez v. State*, 219 S.W.3d 6, 14 (Tex. App.—San Antonio 2006) ("To preserve error for prosecutorial misconduct, the appellant must: (1) make a timely and specific objection; (2) request an instruction to disregard the matter improperly placed before the jury; and (3) move for mistrial."), *aff'd*, 273 S.W.3d 685 (Tex. Crim. App. 2008); *see also* TEX. R. EVID. 802 ("Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay.").[7]

---

[6] Vallejo's motion for new trial did not raise prosecutorial misconduct, or the repeated eliciting of alleged hearsay testimony, as grounds for relief.

[7] To the extent that Vallejo claims that his Sixth Amendment right to confront witnesses was violated by the prosecutor's conduct, he directs us to no instance in the record where his trial counsel objected on those grounds. Therefore, that issue has also been waived. *See Holland v. State*, 802 S.W.2d 696 (Tex. Crim. App. 1991) ("[A]ppellant lodged a hearsay objection, *not* an objection to a violation of confrontation. The two are neither synonymous nor necessarily coextensive. . . . No error on the basis of violation of confrontation was as yet preserved."); *see also* TEX. R. APP. P. 33.1.

Vallejo's third issue is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
6th day of June, 2013.